JUSTICE BAKER,
dissenting.
¶62 As we often have observed, every objective in favor of the constitutionality of a state statute must be presumed. In reviewing the constitutionality of state laws, the question is “not whether it is possible to condemn, but whether it is possible to uphold the legislative action[.]” Satterlee, ¶ 10 (quoting Powell v. State Compen. Ins. Fund, 2000 MT 321, ¶ 13, 302 Mont. 518, 15 P.3d 877). These principles must be honored by the courts even in cases where we may think the legislature could have devised a better system to fulfill its purposes. Particularly when considering an equal protection challenge to legislative enactments of economic and social regulations, courts must give deference to the legislature’s policy choices unless their infirmity is proven beyond a reasonable doubt. If there is “any reasonably conceivable state of facts” to support a legislative classification, its decision is entitled to respect. Kottel v. State, 2002 MT 278, ¶ 55, 312 Mont. 387, 60 P.3d 403. The Court’s review is not confined to those purposes espoused by the legislature, litigants, or the district court, but extends to “any possible purpose of which the court can conceive.” *155 Satterlee, ¶ 34. This standard reflects the courts’ awareness “that the drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one.” Massachusetts Bd. of Ret. v. Murgia, 427 U.S. 307, 314, 96 S. Ct. 2562, 2567 (1976) (per curiam). “The legislature is simply in a better position to develop the direction of economic regulation, social and health issues.” Stratemeyer, 259 Mont, at 153, 855 P.2d at 510.
¶63 We look frequently to the federal courts for guidance in applying the constitution’s guarantee of equal protection of the law. See e.g. Powder River County v. State, 2002 MT 259, ¶ 79, 312 Mont. 198, 60 P.3d 357; Stratemeyer, 259 Mont. at 152, 855 P.2d at 509; Butte Community Union v. Lewis, 219 Mont. 426, 431, 712 P.2d 1309, 1312 (1986). Age-based distinctions long have been upheld against equal protection challenges where the age classification is rationally related to a legitimate state interest, despite imperfection in the state’s determinations or even empirical evidence that its line-drawing is subject to dispute. “Under the Fourteenth Amendment, a State may rely on age as a proxy for other qualities, abilities, or characteristics that are relevant to the State’s legitimate interests.” Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 84, 120 S. Ct. 631, 646 (2000). It is not uncommon that such challenges are brought against laws restricting employment opportunities for workers over a certain age. Gregory v. Ashcroft, 501 U.S. 452, 111 S. Ct. 2395 (1991); Vance v. Bradley, 440 U.S. 93, 99 S. Ct. 939 (1979); Murgia. “Our Constitution permits States to draw lines on the basis of age when they have a rational basis for doing so at a class-based level, even if it ‘is probably not true’ that those reasons are valid in the majority of cases.” Kimel, 528 U.S. at 86, 120 S. Ct. at 647 (emphasis added). Recognizing that “even improvident decisions will eventually be rectified by the democratic process,” Vance, 440 U.S. at 97, 99 S. Ct. at 942, it is not the Court’s province to overturn legislative enactments we believe to be unwise or outdated by evolving societal circumstances.
¶64 In Satterlee, we relied on the simple truth that “when an individual is considered retired, they have, by definition, ended their work life[,]” to uphold the constitutionality of terminating wage-loss benefits intended to bear a reasonable relationship to actual wages lost. Satterlee, ¶ 27. Despite the presence of illogical and unfair results as applied to some workers, we affirmed the rationality of using eligibility for social security benefits-based primarily on age-as a line of demarcation, in order to target limited workers’ compensation resources toward those who are still considered of working age. We stated,
*156 With the statutory intent of § 39-71-710, MCA, in mind, it is rational for the workers’ compensation system to terminate [permanent total disability] benefits at a time when, statistically, most people’s work-lives have ended. While this may not always seem fair, it is not unconstitutional. By acting to terminate benefits as it does, § 39-71-710, MCA, rationally advances the governmental purpose of providing wage-loss benefits that bear a reasonable relationship to actual wages lost.
Satterlee, ¶ 28.
¶65 Our decision today cannot be reconciled with this clear pronouncement of the constitutionality of targeting wage-loss benefits toward those workers who, statistically speaking, are not yet at the end of their work life. The majority states that rehabilitation benefits “do not replace lost wages[.]” Opinion, ¶ 38. Clearly, though, vocational rehabilitation benefits are part of the wage-loss benefit provided by the workers’ compensation statutes. By offering a means to facilitate an injured worker’s return to the workforce, vocational rehabilitation benefits serve the objective of reducing overall wage loss. The law specifically defines a vocational rehabilitation plan as a plan that “reasonably reduces the worker’s actual wage loss.” Section 39-71-1011(4), MCA.
¶66 In drawing a parallel between the temporary availability of vocational rehabilitation benefits and the permanent partial disability benefits at issue in Reesor, the majority misses the mark. As we recognized in Satterlee, the rational basis determination turns on the purpose of the benefits. Satterlee, ¶ 23. Whatever the duration of the actual payments to the worker, there can be no dispute that rehabilitation benefits, like the benefits upheld in Satterlee, are intended to provide assistance throughout a worker’s full work life-in this case, by training the worker for sustained employment in a new field when injuries have foreclosed continued employment in a previous field. Like education, the real benefits from rehabilitation training begin upon graduation, when the newly-trained student or worker can put his or her new skills to use. In contrast, the permanent partial disability benefits considered in Reesor are designed “to restore the claimant to a pre-accident wage level for a limited amount of time.” Satterlee, ¶ 23 (citing Rausch v. State Compen. Ins. Fund, 2005 MT 140, ¶ 23, 327 Mont. 272, 114 P.3d 192).
¶67 Further, although the majority dismisses the purported governmental interests in the limitation on rehabilitation benefits as nothing more than “cost-containment,” Opinion, ¶ 48, the cut-off represents a policy choice, entrusted to the legislature, to allocate *157 resources toward those who, statistically speaking, will use them. This is no more a mere cost-containment measure than our tax code is a mere revenue-generating measure-each unmistakably reflects a wide variety of policy choices.
¶68 “Wage-loss legislation is designed to restore to the worker ... wages lost due to the three major causes of wage-loss: physical disability, economic unemployment, and old age.” 9 Arthur Larson & Lex K. Larson, Larson’s Workers’ Compensation Law § 157.01 (rev. ed., Matthew Bender 2000). As such, the constitutionality of state laws like § 39-71-710, MCA, that offset workers’ compensation by federal social security benefits “has, for the most part, been upheld, as against both equal protection and impairment-of-contract attacks.” Id. at § 157.03[5][b] (citing cases). See generally McDowell v. Jackson Energy RECC, 84 S.W.3d 71 (Ky. 2002). As we referenced in Satterlee, there is a logical “interplay” between the state and federal statutory schemes under which wage-loss benefits “terminate when actual wages would normally terminate-upon retirement.” Satterlee, ¶¶ 13, 27.
¶69 While the majority derives support from Mr. Caldwell’s impressive work history, stating his situation “demonstrates the irrationality of categorically eliminating rehabilitation benefits once a person becomes eligible for social security!,]” Opinion, ¶ 51, Mr. Caldwell’s personal situation is not determinative of the facial challenge he has brought against the statute. “The difference [between a facial challenge and an as-applied challenge] is important. If a court holds a statute unconstitutional on its face, the state may not [apply] it under any circumstances, unless an appropriate court narrows its application; in contrast, when a court holds a statute unconstitutional as applied to particular facts, the state may [apply] the statute in different circumstances.” In re Marriage of K.E.V., 267 Mont. 323, 336, 883 P.2d 1246, 1255 (1994) (Trieweiler, J., concurring and dissenting) (emphasis in original). Thus, even if Caldwell still could be a productive member of the workforce, the statute must be upheld against his facial challenge notwithstanding his individual circumstances. “Facial challenges, unlike as applied challenges, do not depend on the facts of a particular case.” Brady v. PPL Mont., Inc., 2008 MT 177, ¶ 13, 343 Mont. 405, 185 P.3d 330 (2008) (Gray, C.J., dissenting) (citing cases).
¶70 By requiring an individualized examination of a worker’s ability or willingness to return to work, Opinion, ¶ 50, the Court balances the interest of the government against that of the individual right infringed, effectively applying a middle-tier level of scrutiny to the statute’s classification. Lewis, 219 Mont, at 434, 712 P.2d at 1314. Yet *158 individualized testing is not constitutionally required, even if it would result in a more precise determination of eligibility. Murgia, 427 U.S. at 316, 96 S. Ct. at 2568.
¶71 The Court does not dispute that age may be a consideration in determining a worker’s eligibility for rehabilitation benefits. Opinion, ¶ 51 (citing § 39-71-1006(l)(c), MCA) and ¶ 54 (Cotter, J., concurring) (same). That acknowledgement answers the rational basis inquiry and requires the statute to be upheld. There is legitimacy in targeting rehabilitation benefits toward those who are, by constitutionally-permissible definition, not retired. That the legislature found additional means to tailor vocational rehabilitation plans to account for age and other factors does not mean its decision to set an age-based limit on such benefits is irrational. Given the unquestioned legitimacy of the State’s interest in providing benefits that bear a reasonable relationship to wage loss, the legislature reasonably may determine that retraining is most important for those workers with a long work life ahead of them and may channel resources toward that group of workers.
¶72 The majority and concurring opinions make a forceful public policy argument for extending benefits to those who continue working after reaching social security eligibility, but that is the domain of a different branch of government. “Whether or not individual judges may agree with [the legislature’s] assessment, it is not for the courts to reject it.” Vance, 440 U.S. at 106, 99 S. Ct. at 947. While the statute in question may not survive a more heightened level of scrutiny, our review here is confined to rational basis. Under that test, the statute should be upheld.
¶73 I respectfully dissent.
JUSTICE RICE joins in the foregoing dissenting opinion of JUSTICE BAKER.