No. 83-459

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

---

IN THE MATTER OF THE PETITION OF
M.C.,

Petitioner and Respondent,

-vs-

DEPARTMENT OF INSTITUTIONS, et al.,

Respondents and Appellants.

---

APPEAL FROM: District Court of the Third Judicial District,
In and for the County of Deer Lodge,
The Honorable Arnold Olsen, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Nick A. Rotering, Dept. of Institutions, Helena,
Montana (argued)

For Respondent:

James Dorr Johnson, Warm Springs, Montana (argued)

---

Submitted: March 15, 1984

Decided: June 28, 1984

Filed: JUN 28 1984

*Ethel M. Harrison*

Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

This case comes on appeal from an order of the District Court, Third Judicial District, Deer Lodge County, holding that Section 53-21-130, MCA is unconstitutional. We reverse that part of the order declaring Section 53-21-130, MCA, unconstitutional. However, we also hold the State did not adhere to the procedural safeguards set forth in Section 53-21-130, MCA, and affirm the issuance of the writ of habeas corpus by the District Court.

M.C. is a sixteen-year-old juvenile who was committed to the custody of the Department of Institutions under the Youth Court Act on December 16, 1982. M.C. was initially placed at the Pine Hills School for boys. On February 17, 1983, he was transferred from Pine Hills School to Warm Springs State Hospital pursuant to his signing a voluntary admission to that facility. In early March of 1983, M.C. gave notice to the Warm Springs staff that he wanted to be released from his voluntary admission. At that time, the Department of Institutions filed a petition for an involuntary commitment under the Mental Health Act. When the matter came on for hearing on March 25, 1983, the Department of Institutions failed to file a professional status report. As a result, the District Court dismissed the petition and ordered M.C. returned to Pine Hills School.

On May 24, 1983, the Superintendent of Pine Hills School asked the Department of Institutions to return M.C. to Warm Springs State Hospital under the provisions of Section 53-21-130, MCA, (ten-day transfer statute). It was not until mid-June, 1983, that M.C. was actually transferred

-2-

to Warm Springs. On June 29, 1983, M.C. filed a petition for habeas corpus alleging that his transfer from Pine Hills School to Warm Springs under the ten-day transfer statute was an unconstitutional violation of his right to due process.

After a hearing on the matter, the court concluded that the habeas corpus remedy was proper and the parties stipulated to application of the Montana Uniform Declaratory Judgment Act. The District Court held the ten-day transfer statute was unconstitutional because the statute allowed M.C. to be transferred for ten days to Warm Springs without a prior due process proceeding finding serious mental illness. The District Court also held that the full due process protections of Title 53, Chapter 21 applied to M.C.

From the order of the District Court the Department of Institutions appeals arguing the ten-day transfer statute is not violative of either the federal or state constitutional right to due process.

The statute at issue in this case is Section 53-21-130, MCA, which provides:

> "Transfer or commitment to mental health facility from other institutions. No person who is in the custody of the department for any purpose other than treatment of severe mental illness may be transferred or committed to a mental health facility for more than 10 days unless the transfer or commitment is effected according to the procedures set out in this part. However, proceedings for involuntary commitment may be commenced in the county of the mental health facility where the person is, in the county of the institution from which the person was transferred to the mental health facility, or in the county of the person's residence. Notice of a transfer shall be given immediately to any assigned counsel at the mental health facility and to the parents of minors,

-3-

> guardians, friends of respondent, or conservators, as the case may be."

The Superintendent of Pine Hills utilized this statute to transfer M.C. to Warm Springs. Nothing in the record indicates the transfer was made because of an emergency situation or for any compelling reason. Also, the record does not show that M.C. was afforded any due process protections upon expiration of the ten day period.

The extent of the procedural safeguards due an individual depends upon the extent to which he will suffer a grievous loss. Joint Anti-Fascist Refugee Committee v. McGrath (1951), 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817. Thus, the court decides what process is due by balancing the individual's interest in avoiding the detriment against the state's interest in summary infliction of that detriment. Goldberg v. Kelly (1970), 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287.

In holding the statute unconstitutional, the District Court relied upon Vitek v. Jones (1980), 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552. The decision in Vitek arose out of litigation concerning the 1974 conviction of Larry Jones on a charge of robbery. Jones was sentenced to a term of three to nine years at the Nebraska Penal and Correctional Complex in Lincoln. Eight months later, while in solitary confinement, Jones set his mattress on fire severely burning his hands. As a result of the incident, he was transferred pursuant to a provision of the Nebraska Code to the state mental hospital. The provision under which Jones was transferred provided that if a designated physician found that a prisoner suffered from a "mental disease or defect" that could not be given proper treatment in prison the

-4-

Director of Correctional Services could transfer the prisoner to a mental hospital. Jones challenged the constitutionality of the transfer statute and the United States Supreme Court held that the due process clause guarantees a state prisoner certain procedural safeguards, including timely notice and an adversary hearing, before a state may subject him to the "grevious loss" resulting from civil commitment. Vitek, supra, 445 U.S. at 494. The Court, however, did not recognize as a matter of due process the right to appointed counsel at every commitment hearing. Vitek, supra, 445 U.S. at 497. In making its determination, the Court in Vitek employed the traditional due process balancing test, weighing the interests of the individual against those of the state. The test requires consideration of three factors: (1) the individual's interest affected by the state action; (2) the risk of erroneous deprivation of the interest; and (3) the government's interest in maintaining its fiscal and administrative objectives. Mathews v. Eldridge (1976), 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18.

Applying the traditional due process balancing test to the facts of this case indicates Section 53-21-130, MCA, is not unconstituional under either state or federal constitutional provisions.

(1)   The individual's interest affected by the state action.   Under the provisions of the ten-day transfer statute a transfer to a mental institution cannot exceed ten days. At that time one of three things has to occur; first, the individual is returned to the original institution, or, second, the individual voluntarily admits himself to the

mental institution, or third, the Department of Institutions may request a ninety-day involuntary commitment proceeding. In contrast, the Court in Vitek was faced with a situation in which a prisoner could possibly remain at a mental institution for the duration of his prison sentence without any procedural safeguards. Thus, Montana's ten-day transfer statute does not present the type of "grevious loss" contemplated by the Court in Vitek because procedural safeguards must be implemented after ten days. However, as previously stated, nothing in the record indicates M.C. was afforded any due process procedural safeguards upon the expiration of the ten-day period.

(2) The risk of erroneous deprivation of the individual's interest. Under the provisions of the ten-day transfer statute there is a risk that an individual will be erroneously transferred for ten days to a mental institution. However, that fact must be weighed against the State's interest in maintaining the capability to transfer individuals in emergency situations. Significantly, at the end of ten days the individual is afforded procedural safeguards set forth in Title 53.

(3) The state's interest in maintaining its fiscal and administrative objectives. Clearly, one of the purposes of the ten-day transfer statute is to segregate individuals who present an immediate danger to themselves or others. As such, the State's interest in transferring inmates for ten days is compelling.

Under the statute at issue in Vitek, the State's foremost concern was the speed with which it could transfer mentally disturbed inmates to a mental institution. The

Nebraska District Court had characterized this interest as one deserving "primacy." Miller v. Vitek (D. Neb. 1977), 437 F.Supp 567.

Similarly, Montana has a strong interest in speedy transfers of mentally disturbed individuals who may cause injury. Moreover, a speedy transfer of an inmate for ten days may be necessary for another reason: transferring a potentially dangerous, mentally ill inmate to a mental hospital may prevent a lawsuit against prison officials should a mentally disturbed inmate injure another inmate. See generally Fox v. Sullivan (5th Cir. 1976), 539 F.2d 1065.

A consideration of the three factors discussed above indicates the interests of the State outweigh the interests of the individual transferred pursuant to Section 53-21-130, MCA, as long as the procedural safeguards mandated by the statute are followed.

We reverse the District Court's order declaring Section 53-21-130, MCA, unconstitutional, and affirm the District Court's issuance of the writ of habeas corpus.

_____
Justice

We concur:

_____
Chief Justice

_____

_John L. Sheehy_
_____

_____

_Herbert B. Morrison_
_____

_Daniel J. Shea_
_____
Justices