No. 03-615

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 140

KEVIN RAUSCH, CHARLES FISCH,
and THOMAS FROST,

        Petitioners and Appellants,

   v.

STATE COMPENSATION INSURANCE FUND,

        Respondent and Respondent.

APPEAL FROM:    The Workers' Compensation Court,
                   Honorable Mike McCarter, Judge

COUNSEL OF RECORD:

        For Appellants:

                Lon J. Dale (argued), Attorney at Law, Missoula, Montana  (Rausch)

                Stephen D. Roberts (argued), Attorney at Law, Bozeman, Montana (Frost)

                Monte Beck and John Richardson, Beck, Richardson & Amsden,
                Bozeman, Montana (Fisch)

        For Respondent:

                Bradley J. Luck (argued), Garlington, Lohn & Robinson, Missoula,
                Montana

                Greg E. Overturf, Attorney at Law, Helena, Montana

        For Intervenor:

                 Geoffrey C. Angel, Angel Law Firm, Bozeman, Montana

Argued:  March 24, 2004
Submitted:  April 27, 2004
Decided:  June 7, 2005

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1    Kevin Rausch, Charles Fisch and Thomas Frost (Appellants) appeal from the judgment entered in the Workers' Compensation Court, holding that permanently totally disabled (PTD) claimants injured between July 1, 1987, and June 30, 1991, are not entitled to an impairment award, and denying Appellants' request to issue a subpoena compelling the Department of Labor and Industry to furnish information identifying PTD claimants covered by Plan 1 and Plan 2 insurers. Additionally, Appellants argue that denial of an impairment award to PTD claimants violates the equal protection clause. We affirm.

¶2    We restate the issues on appeal as follows:

¶3    1. Did the Workers' Compensation Court err by holding that the 1987 and 1989 versions of the Workers' Compensation Act do not expressly or implicitly authorize payment of an impairment award to permanently totally disabled claimants?

¶4    2. Does the denial of an impairment award to permanently totally disabled claimants pursuant to the 1987 and 1989 versions of the Workers' Compensation Act violate equal protection?

¶5    3. Did the Workers' Compensation Court err in denying Appellants' request for a subpoena compelling the Department of Labor and Industry to provide information identifying claimants covered under Plan I self-insureds and Plan II carriers who may be eligible to receive an impairment award under *Rausch I*?

## FACTUAL AND PROCEDURAL BACKGROUND

¶6 The issues herein rise from our holding in *Rausch v. State Comp. Ins. Fund*, 2002 MT 203, 311 Mont. 210, 54 P.3d 25 (*Rausch I*). In *Rausch I*, Appellants argued that, as PTD claimants, they were entitled to payment of an impairment award under the 1991 and 1997 versions of §§ 39-71-710(1) and -737, MCA. *See Rausch I*, ¶ 10. Further, they asserted that the delay in payment of the impairment award until they were eligible for Social Security benefits violated their right to equal protection of the law and substantive due process, as guaranteed by the Montana Constitution. *Rausch I*, ¶ 10. Lastly, they sought payment of attorney fees, both individually and pursuant to the common fund doctrine for similarly situated claimants. *Rausch I*, ¶ 10. The Workers' Compensation Court had denied Appellants' impairment award claim, holding that Appellants, and all PTD claimants insured under the 1991 and 1997 versions of Workers' Compensation Act statutes, were not entitled to an impairment award. Further, the Workers' Compensation Court held that the denial of an impairment award to PTD claimants did not violate the equal protection clause. *Rausch I*, ¶ 12. On appeal, we concluded that PTD claimants were entitled to an impairment award for the loss of physical functioning resulting from a work-related injury under the 1991 and 1997 versions of the Act, *Rausch I*, ¶ 30; that the award was payable upon receipt of an undisputed impairment rating, *Rausch I*, ¶ 35; and that Appellants' attorneys were entitled to reasonable fees pursuant to the common fund doctrine, *Rausch I*, ¶ 50. We then remanded the case back to the Workers' Compensation Court for further proceedings consistent with our opinion.

¶7 On remand, Appellants then sought a declaratory judgment that PTD claimants insured under the 1987 and 1989 versions of the Workers' Compensation Act were also entitled to an impairment award, arguing the same result under those provisions was required under *Rausch I*. Further, Appellants requested a subpoena requiring the Department of Labor and Industry to provide information identifying all PTD claimants entitled to an impairment award from a Plan 1 self-insured or a Plan 2 carrier pursuant to *Rausch I*.

¶8 However, the Workers' Compensation Court held that PTD claimants injured between July 1, 1987, and June 30, 1991, were not entitled to an impairment award. Further, the court denied Appellants' request for a subpoena. From this order, Appellants appeal.

## *STANDARD OF REVIEW*

¶9 We review a workers' compensation court's conclusions of law to determine whether the court's conclusions are correct. *Rausch I*, ¶ 14.

## *DISCUSSION*

¶10 **Did the Workers' Compensation Court err by holding that the 1987 and 1989 versions of the Workers' Compensation Act do not expressly or implicitly authorize payment of an impairment award to permanently totally disabled claimants?**

¶11 Appellants argue that because the 1987 and 1989 versions of §§ 39-71-710(1) and -737, MCA, are identical to the 1991 and 1997 versions of these provisions, our rationale in *Rausch I* that PTD claimants were entitled to an impairment award under the 1991 and 1997 statutes is equally applicable to the 1987 and 1989 statutes at issue here. They contend that had the Legislature intended to preclude PTD claimants from receiving an impairment

4

award, it would have included language to that effect within § 39-71-702, MCA, which addresses PTD benefits.

¶12 Appellants are correct in noting that the versions of §§ 39-71-710(1) and -737, MCA, at issue here are identical to the versions at issue in *Rausch I*. However, in *Rausch I*, we also interpreted the 1991 and 1997 versions of § 39-71-703, MCA, in conjunction with §§ 39-71-710(1) and -737, MCA. Our holding in *Rausch I* that PTD claimants were entitled to an impairment award under the 1991 and 1997 statutes resulted from our reading §§ 39-71-710(1), -737, and -703, MCA, together, harmonizing these provisions in order to give consistent effect to legislative policy, and concluding that the 1991 and 1997 versions of § 39-71-703, MCA, did not limit impairment awards to permanently partially disabled (PPD) claimants only. *Rausch I*, ¶ 28. However, unlike the 1991 and 1997 versions of § 39-71-703, MCA, which we reasoned in *Rausch I* were not "authority for limiting impairment awards to partially disabled claimants," *Rausch I*, ¶ 28, the 1987 and 1989 versions of this statute expressly classify impairment awards as a partial disability benefit, and thus, are distinctly different than the versions of § 39-71-703, MCA, at issue in *Rausch I*.

¶13 Section 39-71-703, MCA (1987 and 1989), states as follows:

> **Compensation for permanent partial disability–impairment awards and wage supplement.** (1) The *benefits available for permanent partial disability are impairment awards* and wage supplements. A worker who has reached maximum healing and *is not eligible for permanent total disability benefits* but who has a medically determined physical restriction as a result of a work-related injury may be *eligible for an impairment award* and wage supplement benefits as follows:
> (a) The following procedure must be followed for an impairment award:
>  . . .

(iv) If a worker becomes eligible for permanent total disability benefits, the insurer may recover any lump-sum advance paid to a claimant for impairment, as set forth in 39-71-741(5). [Emphasis added.]

¶14 The first sentence of this provision defines an impairment award as a benefit available to PPD claimants. The second sentence then provides that a claimant must have reached maximum healing, have a medically determined, work-related physical restriction, and *be ineligible for PTD benefits* as conditions for entitlement to an impairment award. Thus, this provision defines an impairment award as a PPD benefit, and further, specifically prohibits any claimant who is eligible for PTD benefits from receiving an impairment award. Such mandatory language was not present in the statutes at issue in *Rausch I.* Further support for this interpretation is provided in subsection (1)(a)(iv), which allows an insurer to recover any lump-sum advances made for impairment purposes if the PPD claimant later becomes PTD. Thus, any reasonable reading of the statute requires us to conclude that the 1987 and 1989 versions of § 39-71-703, MCA, limits impairment awards to PPD claimants only.

¶15 While the Legislature did not expressly prohibit payment of an impairment award to PTD claimants under § 39-71-702, MCA (1987 and 1989), which addresses PTD compensation, it defined eligibility for an impairment award, including the requirement that a claimant be ineligible for PTD benefits, sufficiently within § 39-71-703, MCA, to make clear that PTD claimants are not eligible for the award. Therefore, we conclude that the Workers' Compensation Court did not err in its determination that PTD claimants are not entitled to an impairment award under the 1987 and 1989 versions of the Workers' Compensation Act.

6

¶16 **Does the denial of an impairment award to permanently totally disabled claimants pursuant to the 1987 and 1989 versions of the Workers' Compensation Act violate equal protection?**

¶17 Appellants argue that PPD and PTD claimants are similarly situated, and therefore, denying impairment awards to PTD claimants violates the equal protection clause.

¶18 Under the Fourteenth Amendment to the United States Constitution, and Article II, Section 4, of the Montana Constitution, no person shall be denied the equal protection of the laws. *Powell v. State Comp. Ins. Fund*, 2000 MT 321, ¶ 16, 302 Mont. 518, ¶ 16, 15 P.3d 877, ¶ 16. The basic rule of equal protection is that persons similarly situated with respect to a legitimate governmental purpose of the law must receive like treatment. *Powell*, ¶ 22. However, the equal protection clause does not preclude different treatment of different groups so long as all individuals within the group are treated the same. *Powell*, ¶ 22. Thus, to prevail on an equal protection challenge, a party must demonstrate that the state has adopted a classification which discriminates against individuals similarly situated by treating them differently on the basis of that classification. *See Powell*, ¶ 22. If the classes are not similarly situated, then the first criterion for proving an equal protection violation is not met, and it is not necessary for us to analyze the challenge further. *Powell*, ¶ 22. At issue here is whether the Appellants are entitled to certain legislatively created benefits. *See Powell*, ¶ 21. We have previously stated that the test we apply in such cases is the rational relationship test, that is, whether a legitimate governmental objective bears some identifiable rational relationship to its classification. *Powell*, ¶ 21.

¶19 Appellants argue that PPD and PTD claimants are similarly situated by focusing on the procedures required to determine their impairment ratings. Appellants explain that a worker who loses an arm at the elbow in a work-related injury suffers the identical medical impairment whether classified as a PPD or PTD claimant, because, in either case, the worker, upon reaching maximum healing, goes through the same medical evaluation process to determine his permanent impairment and to obtain an impairment rating.

¶20 However, resolving this issue requires a consideration of the entire statutory framework governing these classifications, not just the process of obtaining an impairment rating. To begin at the beginning, when a claimant suffers a work-related injury and is unable to work, the claimant is initially classified as temporary totally disabled (TTD), regardless of whether the claimant will subsequently be determined to be PPD, PTD, or not disabled at all. Section 39-71-701(1), MCA (1987 and 1989). TTD claimants unable to work are entitled to the same wage replacement benefits which the Act provides to claimants who are ultimately determined to be PTD. Sections 39-71-701(3) and (4) and -702(3) and (4), MCA (1987 and 1989). Upon reaching maximum healing, a TTD claimant is then medically assessed and given an impairment rating. Section 39-71-116(21), MCA (1987), and -116(20), MCA (1989). A claimant who is permanently injured and cannot return to work is classified as PTD. Section 39-71-116(15), MCA (1987), and -116(14), MCA (1989). A claimant who is permanently injured but is able to return to work is classified as PPD. Section 39-71-116(14), MCA (1987) and -116(13), MCA (1989). Thus, although both PPD and PTD claimants participate in a similar medical assessment process and obtain an

8

impairment rating, they end up in two very different situations: one can return to employment and the other cannot.

¶21   This distinction is illuminated by a careful reading of the statutes.  Section 39-71-116(14), MCA (1987), and -116(13), MCA (1989), defines PPD as:

> [A] condition, after the worker has reached maximum healing, in which a worker:
>       (a) has a medically determined physical restriction as a result of an injury . . . and (b) *is able to return to work in the worker's job pool* . . . but suffers impairment or partial wage loss, or both.  [Emphasis added.]

¶22   Section 39-71-116(15), MCA (1987), and -116(14), MCA (1989), defines PTD as:

> [A] condition resulting from injury . . . after a worker reaches maximum healing, in which a worker *is unable to return to work in the worker's job pool* . . . . [Emphasis added.]

¶23   After the medical assessment, the permanently disabled claimant loses eligibility for TTD benefits and becomes eligible for one of two significantly different benefit systems, depending on whether the claimant is able to return to work.  The PPD claimant, who is able to return to work, is entitled to wage supplement benefits, which serve to restore the claimant to a pre-accident wage level if the claimant has suffered a decrease in wages upon return to work.  Additionally, the PPD claimant is entitled to an impairment award, which compensates the claimant for the permanent loss of physical function.  This benefit is smaller than the total disability benefit, and is paid over a shorter period of time, but is designed to compensate a claimant who is able to return to work and re-commence earning a wage.  The payment of an award to a claimant who returns to work is consistent with the

Act's stated purpose of returning injured workers to the work force. Section 39-71-105(2), MCA (1987 and 1989), states:

> **Declaration of public policy**. For the purposes of interpreting and applying Title 39, Chapters 71 [ ], the following is the public policy of the state:
>
> . . . .
>
> (2) A worker's removal from the work force due to a work-related injury or disease has a negative impact on the worker, the worker's family, the employer, and the general public. Therefore, it is the objective of the workers' compensation system to return a worker to work as soon as possible after the worker has suffered a work-related injury or disease.

¶24 In contrast, PTD claimants, who cannot return to work, are not eligible for either wage supplement benefits or an impairment award. Instead, PTD claimants are eligible for a larger benefit which is paid continuously for the claimant's work life. These two important distinctions between partial and total disability benefits–amount and duration–are clearly set forth in the Act. First, PPD:

> **Compensation for permanent partial disability–impairment awards and wage supplements.** (1) The benefits available for permanent partial disability are impairment awards and wage supplements.
>
> . . . .
>
> (a) The following procedure must be followed for an impairment award:
>
> (i) *Each percentage point of impairment is compensated in an amount equal to 5 weeks times 66 2/3% of the wages received at the time of the injury, subject to a maximum compensation rate of one-half of the state's average weekly wage at the time of injury.*

Section 39-71-703(1)(a)(1), MCA (1987 and 1989) (emphasis added). Then, PTD:

> **Compensation for permanent total disability.** (1) If a worker is no longer temporarily totally disabled and is unable to return to work due to injury, the worker is eligible for permanent total disability benefits:
>
> . . .

10

(3) *Weekly compensation benefits for an injury resulting in permanent total disability shall be 66 2/3% of the wages received at the time of the injury. The maximum weekly compensation shall not exceed the state's average weekly wage at the time of injury.*

Section 39-71-702(1) and (3), MCA (1987 and 1989) (emphasis added). Thus, under § 39-71-703, MCA (1987 and 1989), PPD disability benefits (impairment awards) are calculated by each percentage point of impairment being compensated in an amount equal to five weeks times 66-2/3 percent of the wages received at the time of injury, *not to exceed one-half of the state's average weekly wage at the time of injury.* In contrast, under § 39-71-702, MCA (1987 and 1989), payment of PTD benefits are calculated by compensating the claimant in the amount of 66-2/3 percent of the wages received at the time of the injury, and are *not limited* to one-half the state's weekly wage rate, like PPD benefits, but, rather, are payable up to the full state rate. Further, again unlike PPD benefits, PTD benefits are paid continuously over the life of the claimant, subject only to termination at the claimant's retirement age. *See* § 39-71-710, MCA (1987 and 1989).

¶25 Thus, the statutory framework of the Act reveals the distinctly different purposes served by PPD and PTD benefits. PPD benefits compensate the worker for sustaining a partial disability by a smaller impairment award, and supplements the wages earned by the claimant upon return to work. PTD benefits do not contemplate a return to work, but, rather, provides a continuous, higher benefit which is paid over the work life of the totally disabled claimant. With these distinctions in mind, it would be inappropriate for this Court to make comparisons between these dissimilarly situated classes and then to order that either class

11

is entitled to a benefit designed for a different class–here, that PTD claimants are entitled to an impairment award. We conclude, therefore, that PPD claimants and PTD claimants are not similarly situated, and that Appellants' equal protection challenge to the failure to pay an impairment award to PTD claimants must fail.

¶26 **Did the Workers' Compensation Court err in denying Appellants' request for a a subpoena compelling the Department of Labor and Industry to provide information identifying Plan 1 self-insureds and Plan 2 carriers entitled to impairment awards under *Rausch I?***

¶27 We addressed and resolved this issue in *Ruhd v. Liberty Northwest Ins. Corp.*, 2004 MT 236, 322 Mont. 478, 97 P.3d 561, a case we consolidated for oral argument purposes with this matter. Therefore, we need not reach this issue herein.

¶28 The Workers' Compensation Court is affirmed.

/S/ JIM RICE

We Concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ PATRICIA O. COTTER
/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON