

DA 13-0286

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 99


DERRICK GOBLE and LYNN GERBER,

       Petitioners and Appellants,

  v.

MONTANA STATE FUND,

       Respondent and Appellee.


APPEAL FROM:    Montana Workers' Compensation Court,
                    Cause Nos. WCC 2010-2615, WCC 2012-2904
                    Honorable James Jeremiah Shea, Presiding Judge


COUNSEL OF RECORD:

        For Appellants:

                Thomas C. Bulman, Eric Rasmusson, Bulman Law Associates, PLLC, Missoula, Montana

        For Appellee:

                Thomas E. Martello, Daniel B. McGregor, Special Assistants Attorney General, Montana State Fund, Helena, Montana


                              Submitted on Briefs:  February 5, 2014
                                    Decided:  April 15, 2014


Filed:

                _____
                            Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1    Appellants Derrick Goble (Goble) and Lynn Gerber (Gerber) appeal from the Montana Workers' Compensation Court's (WCC) March 28, 2013 orders denying their motions for summary judgment and granting Montana State Fund's (MSF) motion for summary judgment. We affirm.

¶2    We consider the following issues on appeal:[1]

¶3    1.    Whether the WCC properly determined that § 39-71-744, MCA, rendered incarcerated claimants ineligible for disability or rehabilitation compensation benefits.

¶4    2.    Whether § 39-71-744, MCA, violates appellants' constitutional rights to equal protection.

¶5    3.    Whether § 39-71-744, MCA, violates appellants' constitutional rights to substantive due process.

¶6    4.    Whether § 39-71-744, MCA, violates appellants' constitutional rights to procedural due process.

¶7    5. Whether § 39-71-744, MCA violates appellants' constitutional rights to be free from excessive fines.

---

[1] Goble/Gerber have set forth in their "Statement of Issue #2: Whether the Workers' Compensation Court's holdings in *Wimberly v. State Compen. Ins. Fund*, 1994 MTWCC 52, and *McCuin v. Montana State Fund*, 2006 MTWCC 41 regarding Mont. Code Ann. § 39-71-744 should be reversed." The Court may not, however, visit two prior decisions of the WCC and sua sponte reverse them. We are nevertheless confident that our analysis herein will be beneficial to further proceedings before the WCC interpreting the provisions of § 39-71-744, MCA. We have restated the issues accordingly.

2

# BACKGROUND

¶8 On July 8, 2004, Goble injured his right shoulder while in the course and scope of his employment with ECC Controls, Inc. in Missoula County. At the time of Goble's injury, ECC Controls, Inc. was insured by MSF. MSF accepted liability for his claim, and paid Goble indemnity and medical benefits.

¶9 Two years later, Goble was charged with the commission of numerous criminal offenses. Goble and MSF stipulated before the WCC to the following history of Goble's incarceration:[2]

> On November 6, 2006, in *State v. Goble*, Cause No. DC-06-294, Montana Fourth Judicial District Court, Missoula County, Goble pled guilty to three felonies and one misdemeanor. On December 18, 2006, Goble was sentenced to a term of incarceration of greater than 30 days in that case, with all counts to run concurrently but consecutively with Cause Nos. DC-06-103 and DC-04-520, plus financial assessments, fees, and fines.

> On November 6, 2006, Goble pled guilty to three felonies and two misdemeanors in *State v. Goble*, Cause No. DC-06-103, Montana Fourth Judicial District Court, Missoula County. On December 18, 2006, Goble was sentenced to incarceration for 5 years on each of the felonies and to 6 months incarceration for each of the misdemeanors, together with financial assessments, fees, and fines.

> On December 18, 2006, Goble admitted he had violated the terms and conditions of his probation in *State v. Goble*, Cause No. DC-04-520, Montana Fourth Judicial District Court, Missoula County. On December 18, 2006, Goble's prior deferred sentence was revoked and he was ordered incarcerated for five years on the two felonies and one misdemeanor in that case, his sentence to run consecutively with the sentence in DC-06-294, together with financial assessments, fees, and fines.

---

[2] The Court is limited to the WCC's record and the parties' stipulated facts. While the history of Goble's incarceration has not been clearly set out by the parties, it is nevertheless sufficient to establish that Goble was incarcerated for a period in excess of 30 days and for substantially longer than 120 weeks.

On July 24, 2007, Goble pled guilty to the offense of being a felon in possession of a stolen firearm in *United States of America v. Derrick Goble*, Cause No. CR-07-31-M-DWM, United States District Court for the District of Montana, Missoula Division. On November 21, 2007, Goble was sentenced to 84 months of incarceration, plus an assessment fee. His sentence was to run consecutively with the sentence in Cause No. DC-04-520 and concurrently with the sentences in Cause No. DC-06-294 and DC-06-103.

*Goble*, 2013 MTWCC 8, ¶¶ 9-12. Goble owed back child support at the time of his incarceration.

¶10 The parties further stipulate that Goble was not advised in any of his state or federal criminal matters that his incarceration would impact his receipt of workers' compensation benefits.

¶11 On June 22, 2006, MSF notified Goble that, pursuant to § 39-71-744, MCA, MSF was going to terminate payment of temporary benefits beyond May 29, 2006, as a result of Goble's incarceration. Thereafter, on March 25, 2009, MSF notified Goble that he would have been entitled to 120 weeks of permanent partial disability (PPD) benefits beginning May 1, 2006, at a rate of $252 per week (for a total of $30,240), but that he was not entitled to receive those benefits while he was incarcerated. The parties do not dispute that Goble was incarcerated for the entire 120-week period during which he was eligible to receive PPD benefits.

¶12 In August 2008, while in the course and scope of his employment with Vann's, Inc. in Missoula County, claimant Gerber sustained an injury to his right shoulder. MSF also accepted liability for Gerber's claim and paid him indemnity and medical benefits. MSF notified Gerber that he was eligible to receive PPD benefits for 48.75 weeks, at a

4

rate of $287.16 per week, as of May 12, 2010. MSF also notified Gerber that he had the option to receive these benefits in a lump sum, which Gerber declined. In December 2010 Gerber was sentenced to a period of incarceration in excess of 30 days. Gerber was not advised that his incarceration would affect his workers' compensation benefits. In January 2011 MSF sent Gerber a letter notifying him that he was ineligible to receive the approximately 16 remaining weeks of his PPD benefits, amounting to $4,381.02, due to his incarceration.

¶13 Goble and Gerber each appealed to the WCC their ineligibility to receive PPD benefits under § 39-71-744, MCA. Gerber sought certification as a class action and joinder with Goble's earlier petition. The WCC denied both motions and the claims of Goble and Gerber went forward individually. At the November 27, 2012 hearing, Goble/Gerber argued the same issues which they now raise on the appeal. On March 28, 2013, the WCC granted MSF's motions for summary judgment as to both Goble and Gerber and denied claimants' cross-motions for summary judgment. Goble and Gerber filed a joint notice of appeal.

**STANDARDS OF REVIEW**

¶14 We review a grant of summary judgment de novo. *Wiard v. Liberty N.W. Ins. Corp.*, 2003 MT 295, ¶ 13, 318 Mont. 132, 79 P.3d 281. In reviewing the WCC's grant or denial of summary judgment, this Court uses the same standard in ruling on a motion for summary judgment; "we determine whether there is an absence of genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law." *Satterlee v. Lumberman's Mut. Cas. Co.*, 2009 MT 368, ¶ 9, 353 Mont. 265, 222

P.3d 566.  We review the WCC's legal conclusions for correctness.  *Lund v. State Compen. Mut. Ins. Fund*, 263 Mont. 346, 348, 868 P.2d 611, 612 (1994).

¶15    The constitutionality of a statute is a question of law, and we review a lower court's legal conclusions for correctness.  *Henry v. State Compen. Ins. Fund*, 1999 MT 126, ¶ 10, 294 Mont. 449, 982 P.2d 456.  The constitutionality of a statute is presumed, "unless it conflicts with the constitution, in the judgment of the court, beyond a reasonable doubt."  *Powell v. State Compen. Ins. Fund*, 2000 MT 321, ¶ 13, 302 Mont. 518, 15 P.3d 877.  The party challenging the constitutionality of a statute bears the burden of proving the statute unconstitutional beyond a reasonable doubt.  *Henry*, ¶ 11. If any doubt exists, it must be resolved in favor of the statute.  *Powell*, ¶ 13.

## DISCUSSION

¶16    When assessing a claimant's entitlement to benefits pursuant to the Workers' Compensation Act (WCA; Title 39, chapter 71, MCA), we apply the statutes in effect at the time the claimant was injured.  *Dunnington v. State Compen. Ins. Fund*, 2000 MT 349, ¶ 12, 303 Mont. 252, 15 P.3d 475 (citing *Hale v. Royal Logging*, 1999 MT 302, ¶ 14, 297 Mont. 165, 990 P.2d 1245).  Therefore, the 2003 version of the WCA is applicable to Goble's claim, and the 2007 version is applicable to Gerber's claim. However, these two versions are nearly identical, aside from one minor difference which will be discussed below.

¶17    Section 39-71-703, MCA, provides the basis for an award of PPD benefits and states, in pertinent part:

(1) If an injured worker suffers a permanent partial disability and is no longer entitled to temporary total or permanent total disability benefits, the worker is entitled to a permanent partial disability award if that worker:

    (a) has an actual wage loss as a result of the injury; and

    (b) has a permanent impairment rating . . . .

(2) When a worker receives a Class 2 or greater class of impairment as converted to the whole person . . . , and has no actual wage loss as a result of the compensable injury or occupational disease, the worker is eligible to receive payment for an impairment award only.

The only relevant difference between the 2003 and 2007 versions of § 703 is that the latter provides that an undisputed impairment award may be paid in a lump sum if requested by the claimants. *See* § 39-71-703(7) (2007), MCA. In the instant case, Goble and Gerber met all the criteria set forth in § 703(1) for benefits and were deemed to be "entitled" to PPD by MSF. Gerber, the only claimant under which the provisions of § 703 (2007) applied, did not elect to pursue a lump sum payment.

¶18 ***Issue One: Whether the WCC properly determined that § 39-71-744, MCA, rendered incarcerated claimants ineligible for disability or rehabilitation compensation benefits.***

¶19 Goble and Gerber contend that the WCC misconstrues § 744 as allowing it to deduct from their PPD benefits one week of benefits for each week of incarceration, effectively drawing down all of their PPD benefits to zero. Goble/Gerber argue that the "time limit on benefits" language in § 744 should be read as referring to the statute of limitations contained in §§ 39-71-601 through -603, MCA, and not to the payment of their PPD benefits to which Goble/Gerber would otherwise be entitled, but for their incarceration. MSF responds that the plain meaning of § 744 clearly supports the WCC's interpretation of the statute.

¶20 We observe that § 744 (2003) and § 744 (2007) are identical. Section 744(1) provides:

> [A] claimant is not eligible for disability or rehabilitation compensation benefits while the claimant is incarcerated for a period exceeding 30 days in a correctional institution or jail as the result of conviction of a felony or a misdemeanor. The insurer remains liable for medical benefits. A time limit on benefits otherwise provided in this chapter is not extended due to a period of incarceration.

¶21 "We construe a statute to ascertain the legislative intent and give effect to the legislative will." *State v. Letasky*, 2007 MT 51, ¶ 11, 336 Mont. 178, 152 P.3d 1288 (citing *S.L.H. v. State Compen. Mut. Ins. Fund*, 2000 MT 362, ¶ 16, 303 Mont. 364, 15 P.3d 948). The Court's first step in interpreting a statute is to look at its plain language, and if the language is clear and unambiguous, no further interpretation is required. *Letasky*, ¶ 11. "In the construction of a statute, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA.

¶22 As set forth above, § 744 provides that a claimant is not eligible for disability or rehabilitation compensation benefits during the time when the claimant is incarcerated, provided the incarceration exceeds 30 days. Furthermore, the statute specifically states that "[a] time limit on benefits otherwise provided in this chapter is not extended due to a period of incarceration." In considering the plain language of § 744, it is clear that the Legislature intended for claimants incarcerated in excess of 30 days to be ineligible to receive disability or rehabilitation benefits.

¶23 Goble/Gerber argue that they are immune from the ineligibility language of § 744 because their eligibility to receive § 703 benefits was determined prior to their incarceration. They argue that ineligibility to receive benefits based upon incarceration amounts to a "forfeiture" of a constitutionally protected right. Goble/Gerber's argument would have us interpret the words "eligible" and "time limit" to mean that § 744 forfeits only the benefits of claimants who become eligible while they are incarcerated, and not before, and that such benefits are presumably payable upon discharge from confinement. Such an interpretation is inconsistent with the clear provisions of § 744, and would require the Court, among other adaptations, to insert "forfeiture" and remove "not eligible" from the statute in contravention of § 1-2-101, MCA.

¶24 We further note, as did the WCC, that in the absence of a provision such as § 744, the payment of benefits to an incarcerated claimant would essentially mean that the public would bear the cost of an incarcerated individual twice: first, through the payment of benefits; and second, through the cost of incarceration. The public policy of Montana's WCA, as set forth in § 39-71-105(1) and (3), MCA, is to provide wage-loss benefits which bear a reasonable relationship to actual wages lost and "to return a worker to work as soon as possible after the worker has suffered a work-related injury or disease." Both objectives are thwarted by the interpretation of § 744 offered by Goble/Gerber. If Goble/Gerber were to receive wage-loss benefits when they are incapable of earning a wage and incapable of returning to work, then the clear purpose of the statute, as stated in § 39-71-105, MCA would be frustrated. A worker who has become incarcerated has removed himself from the job force as a result of committing a crime. Goble/Gerber,

9

therefore, are not losing wages as a result of their injuries, but rather as a result of their criminal activity.

¶25 The parties stipulate that Goble was incarcerated during the entire 120-week period that he was otherwise eligible to receive PPD payments, and that Gerber was incarcerated for approximately the final 16 weeks of his 48.75-week payment period. As a direct result of their incarcerations, Goble received no PPD benefits, and Gerber's benefits were terminated after approximately 34 weeks. We conclude that the WCC interpreted and applied the provisions of § 703 and § 744 correctly.

¶26 ***Issue Two: Whether § 39-71-744, MCA, violates appellants' constitutional rights to equal protection.***

¶27 Goble/Gerber argue that § 744 violates their rights to equal protection because they are being treated differently than similarly situated individuals, and this difference in treatment bears no rational relationship to a legitimate governmental interest. In addressing the first step of the equal protection analysis, Goble/Gerber identify the classes involved as those workers who qualify for PPD benefits under § 703, and those workers with the same criteria who are subsequently incarcerated for a period in excess of 30 days. They argue that the WCC erred in determining that these classes are not similarly situated.[3]

¶28 Under the Fourteenth Amendment to the United States Constitution, and Article II, Section 4, of the Montana Constitution, no person shall be denied equal protection of the

---

[3] At some point in the proceedings, Goble/Gerber attempted to introduce an additional theory under their equal protection claim concerning the definitions of the classes. The WCC rejected this theory. We find that the WCC did not abuse its discretion by not allowing this alternate theory, and thus will not address it.

10

laws. "The basic rule of equal protection is that persons similarly situated with respect to a legitimate governmental purpose of the law must receive like treatment." *Rausch v. State Compen. Ins. Fund,* 2005 MT 140, ¶ 18, 327 Mont 272, 114 P.3d 192 (citing *Powell*, ¶ 22). When analyzing an equal protection claim, the Court follows a three-step process: (1) identify the classes involved and determine if they are similarly situated; (2) determine the appropriate level of scrutiny to apply to the challenged legislation; and (3) apply the appropriate level of scrutiny to the challenged statute. *Henry*, ¶ 27.

¶29    It is necessary for the plaintiff to identify a similarly situated class against which the plaintiff's class can be compared because "'[d]iscrimination cannot exist in a vacuum; it can be found only in the unequal treatment of people in similar circumstances.'" *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995) (quoting *Atty. Gen. of U.S. v. Irish People, Inc.*, 684 F.2d 928, 946 (D.C. Cir. 1982)). The goal of identifying a similarly situated class is to isolate the factor allegedly subject to impermissible discrimination. *Freeman*, 68 F.3d at 1187. Thus, two groups are similarly situated if they are equivalent in all relevant respects other than the factor constituting the alleged discrimination. *See Snetsinger v. Mont. U. Sys.*, 2004 MT 390, ¶ 27, 325 Mont. 148, 104 P.3d 445; *Oberson v. U.S. Dept. of Agric.*, 2007 MT 293, ¶¶ 19-20, 339 Mont. 519, 171 P.3d 715.

¶30    In the present context, Gerber/Goble identify two classes that are similarly situated in all relevant respects except the factor of incarceration. The two classes Goble/Gerber identify are defined by their eligibility for PPD benefits. In order to properly consider

whether the two classes are similarly situated, we must examine the nature of PPD

benefits and their statutory origin. Section 39-71-116(27), MCA, defines PPD as:

> a physical condition in which a worker, after reaching maximum medical healing:
> (a) has a permanent impairment . . . .
> (b) is able to return to work in some capacity but the permanent impairment impairs the worker's ability to work; and
> (c) has an actual wage loss as a result of the injury.

Specifically, PPD benefits serve to restore the claimant to a pre-accident wage level for a

limited amount of time. *Satterlee*, ¶ 23. We have previously explained:

> The PPD claimant, who is able to return to work, is entitled to wage supplement benefits, which serve to restore the claimant to a pre-accident wage level if the claimant has suffered a decrease in wages upon return to work. Additionally, the PPD claimant is entitled to an impairment award, which compensates the claimant for the permanent loss of physical function. This benefit is smaller than the total disability benefit, and is paid over a shorter period of time, but is designed to compensate a claimant who is able to return to work and re-commence earning a wage. The payment of an award to a claimant who returns to work is consistent with the [WCA's] stated purpose of returning injured workers to the work force.

*Rausch*, ¶ 23.[4] Thus, PPD benefits are designed for the worker who is able to return to

work in the worker's job pool, but nevertheless suffers impairment or partial wage loss,

or both. Section 39-71-116(27), MCA.

¶31    In *Caldwell v. MACo Workers' Compensation Trust*, 2011 MT 162, 361 Mont.

140, 256 P.3d 923, we considered whether the denial of rehabilitation benefits to a

---

[4] Our use of the term "wage supplements" in *Rausch* refers to statutory language which was discontinued in the 1991 legislative session (*see* Laws of Mont., 1991, ch. 574, § 4) and changed to a benefit calculated by a disability formula which considers multiple factors, including wage loss. *See* § 39-71-703(1)-(9), MCA. Thus, despite the use of the discontinued term, the above explanation in *Rausch* of the purpose of § 703 benefits is still instructive to the instant case.

claimant violated equal protection when the basis for the denial turned on the claimant's age-based eligibility for social security benefits. Section 39-71-710, MCA, deemed "retired," and therefore ineligible for workers' compensation benefits, any disabled worker eligible for social security retirement benefits. We determined that two similarly situated classes were created: (1) those vocational rehabilitation eligible claimants who are not eligible for social security, and (2) those vocational rehabilitation eligible claimants who are eligible to receive social security retirement benefits. We stated that "§ 39-71-710, MCA, creates two classes out of similarly situated persons, distinguished only by the age-based deemed 'retired' provision of § 39-71-710, MCA." *Caldwell*, ¶ 18; *see also Reesor v. Mont. State Fund*, 2004 MT 370, ¶ 12, 325 Mont. 1, 103 P.3d 1019; *Satterlee*, ¶ 16.

¶32   As in *Caldwell*, we deem § 703 and § 744, construed together, to create two classes out of similarly situated persons, distinguished only by the provision of § 744 relating to incarceration. Both classes are composed of workers who otherwise qualify for disability benefits under § 703, but one class (of which Gerber/Goble are members) is denied those benefits based on the sole distinguishing factor of incarceration. Whether an individual is currently incarcerated bears no relation to that individual's likelihood of receiving PPD benefits prior to incarceration.

¶33   The WCC determined that Goble/Gerber's equal protection claim failed due to the lack of similarly situated classes. The WCC's determination was based largely on *State v. Renee*, 1999 MT 135, 294 Mont. 527, 983 P.2d 893. *Renee* dealt with a statute which required a court to consider sentencing alternatives for non-violent felony

13

offenders. *Renee*, ¶ 14. Defendant Renee, who was convicted of misdemeanors, brought an equal protection claim, arguing that the statute should also apply to misdemeanor offenders as well. *Renee*, ¶ 14. We held that misdemeanor and non-violent felony offenders are not similarly situated for the purposes of sentencing considerations due in part to the differences in the quality and duration of punishment between the two groups, and in the long term effects on an individual's liberty interest brought about by a felony conviction as compared to that of a misdemeanor conviction. *Renee*, ¶¶ 31-32. We explained that individuals convicted of different criminal offenses—misdemeanors and non-violent felonies—are not similarly situated for purposes of sentencing. The only distinguishing characteristic between the two classes in *Renee* bore a direct relationship to the statute requiring the court's consideration of sentencing alternatives. *Renee*, ¶¶ 30-33.

¶34 In the present case, the WCC reasoned that if misdemeanor and non-violent felony offenders are not similarly situated for the purposes of an equal protection analysis pursuant to *Renee*, then unincarcerated injured workers and incarcerated injured workers are also not similarly situated. The WCC essentially came to the conclusion that the classes presented by Goble/Gerber were not similarly situated because a rational basis exists for treating incarcerated claimants differently from unincarcerated claimants. By doing so, the WCC subsumed the factor—incarceration—that we are trying to isolate and test against a rational basis. Defining the classes for equal protection analysis can be difficult and tedious, and if not done with clarity of vision, may result in the class definition swallowing up the factor we are attempting to examine. An inherent problem

14

in evaluating an equal protection challenge to a statute lies in defining the classes in a way which will effectively test the statute without truncating the analysis. Thus, Goble/Gerber have established that they are similarly situated to unincarcerated PPD beneficiaries by virtue of the provisions of § 703. *Renee*, therefore, does not direct the inquiry here. We conclude the WCC erred in finding that workers who qualify for PPD benefits under § 703 are not similarly situated to workers also meeting the criteria of § 703, but who are incarcerated for a period in excess of 30 days.

¶35 The second step in addressing an equal protection claim is determining the appropriate level of scrutiny to apply to the challenged legislation. *Henry*, ¶ 29. We review equal protection challenges under one of three recognized tiers of scrutiny: strict scrutiny, intermediate scrutiny, or rational basis. *State v. Price*, 2002 MT 229, ¶¶ 33-34, 311 Mont. 439, 57 P.3d 42. This Court has previously held that the workers' compensation statutes neither infringe upon the rights of a suspect class nor involve fundamental rights which would trigger a strict scrutiny analysis. *Henry*, ¶ 29; *Heisler v. Hines Motor Co.*, 282 Mont. 270, 279, 937 P.2d 45, 50 (1997) (citing *Stratemeyer v. Lincoln Co.*, 259 Mont. 147, 151, 855 P.2d 506, 509 (1993); *Cottrill v. Cottrill Sodding Serv.*, 229 Mont. 40, 42, 744 P.2d 895, 897 (1987)). We have held that the rational basis test applies when considering equal protection challenges to the workers' compensation statutes. *Henry*, ¶ 29; *Zempl v Uninsured Employers' Fund,* 282 Mont. 424, 430, 938 P.2d 658, 662 (1997); *Heisler*, 282 Mont. at 279, 937 P.2d at 50 (citing *Stratemeyer*, 259 Mont. at 151, 855 P.2d at 509). Based on the foregoing, we will apply the rational basis test to Goble/Gerber's equal protection challenge.

¶36 The final step in our equal protection analysis is to apply the appropriate level of scrutiny to evaluate the constitutional challenge. *Henry*, ¶ 32. The rational basis test requires a statute to bear a rational relationship to a legitimate governmental interest. *Satterlee*, ¶ 18 (citing *Henry*, ¶ 33). As such, we must address the public policy considerations that underlie the WCA. These considerations are stated in § 39-71-105(1) and (3), MCA, as follows:

> (1) An objective of the Montana workers' compensation system is to provide, without regard to fault, wage-loss and medical benefits to a worker suffering from a work-related injury or disease. Wage-loss benefits are not intended to make an injured worker whole but are intended to assist a worker at a reasonable cost to the employer. Within that limitation, the wage-loss benefit should bear a reasonable relationship to actual wages lost as a result of a work-related injury or disease.
>
> .  .  .
>
> (3) A worker's removal from the workforce because of work-related injury or disease has a negative impact on the worker, the worker's family, the employer, and the general public. Therefore, an objective of the workers' compensation system is to return the worker to work as soon as possible after the worker has suffered a work-related injury or disease.

"Actual wage loss" means that "the wages that a worker earns or is qualified to earn after the worker reaches maximum healing are less than the actual wages the worker received at the time of injury." Section 39-71-116(1), MCA.

¶37 Based upon these statutory provisions, the policy of Montana's WCA is to provide wage-loss benefits which bear a reasonable relationship to actual wages lost and to return a worker to work as soon as possible. The provisions of § 744 remove from the pool of eligible beneficiaries those individuals who cannot return to work due to incarceration and who are unable to earn an actual wage. Because an incarcerated claimant has

16

removed himself from the job force by committing a crime, his lost wages are attributable to his incarceration and not his injury. Permitting incarcerated claimants to collect workers' compensation benefits, as Goble/Gerber suggest, would undercut a principal objective of the WCA to provide wage-loss benefits that bear a reasonable relationship to actual wages lost as a result of a work-related injury. The ineligibility provision of § 744 rationally advances the legitimate governmental interests of the WCA. *See Satterlee*, ¶ 28. As such, the WCC did not err in concluding that § 744 did not violate Goble/Gerber's rights to equal protection.

¶38    ***Issue Three:   Whether § 39-71-744, MCA, violates appellants' constitutional rights to substantive due process.***

¶39    Goble/Gerber argue that § 744 violates their substantive rights to due process because it unreasonably and arbitrarily provides that incarcerated claimants are ineligible for § 703 benefits. They assert that the WCC's interpretation of § 744 is "a further instrument of punishment" because it "forfeits" their benefits. MSF maintains that substantive due process is satisfied because there is a legitimate purpose of the statute and it is not patently arbitrary.

¶40    "The theory underlying substantive due process reaffirms the fundamental concept that the Due Process Clause contains a substantive component which bars arbitrary governmental actions, regardless of the procedures used to implement them, and serves as a check on oppressive governmental action." *Newville v. State, Dept. of Family Servs.*, 267 Mont. 237, 249, 883 P.2d 793, 801 (1994). Thus, a "'substantive due process analysis requires a test of the reasonableness of a statute in relation to the State's power

17

to enact legislation.'" *Newville*, 267 Mont. at 250, 883 P.2d at 801 (quoting *Raisler v. Burlington N. Ry. Co.*, 219 Mont. 254, 263, 717 P.2d 535, 541 (1985)). The State cannot use its power to take unreasonable, arbitrary, or capricious action against an individual; therefore, a statute enacted by the Legislature must be reasonably related to a permissible legislative objective in order to satisfy guarantees of substantive due process. *Powell*, ¶ 29 (citing *Newville*, 267 Mont. at 250, 883 P.2d at 801).

¶41 We have already determined pursuant to our equal protection analysis that there exists a rational basis for treating incarcerated claimants differently from those who choose to remain law abiding. We will not elaborate further except to state that § 744 is not arbitrary, and serves the legitimate governmental purpose set forth in the policy provisions of Montana's workers' compensation statutes. Section 39-71-105, MCA. Furthermore, a statute enacted by the Legislature is presumed to be constitutional. *Satterlee*, ¶ 10 (citing *Powell*, ¶ 13). Goble/Gerber have the burden of proof in challenging the constitutionality of § 744, which they have failed to meet. *Henry*, ¶ 11.

¶42 The Dissent correctly notes that one purpose of the WCA is to relieve a worker's family from the negative impact occasioned by the worker's work-related injury and resulting wage loss. Dissent, ¶ 53. However, neither Goble/Gerber nor their families are suffering a negative impact due to their work-related injuries. Rather, the families of Goble/Gerber are suffering a negative impact due to Goble/Gerber's decisions to conduct criminal activity which led to incarceration. As the WCC's orders correctly explained,

> Non-incarcerated injured workers rely on their benefits to provide the
> necessities of life for themselves and their families. Incarcerated workers
> are provided the necessities of life (food and shelter) due to their

18

incarceration. Likewise one of the results of their incarceration is that they cannot provide for their families irrespective of whether they had suffered an industrial injury.

Additionally, workers' compensation benefits, just like wages, are subject to garnishment for the purposes of fulfilling child support obligations. *See* §§ 39-71-743, 40-5-411, MCA. However, a child support obligor's wages or workers' compensation benefits can only be garnished to the extent that he or she continues to be employed. While this undoubtedly creates a serious financial hardship for families that rely on such support, the remedy for this problem is not ours to make. And despite the Dissent's assertion that § 744 is purely punitive and thus unreasonable in a substantive due process analysis, as discussed in Issue 4, sound policy decisions underlie the Legislature's decision not to allow individuals who are no longer earning wages due to incarceration to continue to receive wage-loss benefits.

¶43    Goble/Gerber also argue that § 744 violates their rights to substantive due process by undermining the quid pro quo basis of the WCA. Black's Law Dictionary defines quid pro quo as "[a]n action or thing that is exchanged for another action or thing of more or less equal value." *Black's Law Dictionary* 1282 (Bryan A. Garner ed., 8th ed., West 2004). As this Court has held on several occasions, the enactment of the WCA demonstrated a compromise between industry and labor in which labor received guaranteed no-fault recovery, and industry was relieved of the possibility of large and potentially uncapped recoveries in the tort system. *Satterlee*, ¶ 37 (citing *Stratemeyer v. Lincoln Co.*, 276 Mont. 67 at 74, 915 P.2d 175 at 179 (1996)). Essentially, the WCA requires both an employer and an employee to give up rights which are proportional in

19

value. Goble/Gerber argue that § 744 violates the quid pro quo foundation of the WCA, in that they gave up their rights to sue their employers, and did not receive anything in return. However, as the WCC correctly noted, § 744 upholds the quid pro quo because it reflects that an incarcerated claimant cannot return to the workforce and, correspondingly, requires that he be deemed ineligible for PPD benefits. We additionally note that, while § 744 renders incarcerated claimants ineligible for PPD benefits, it still provides for any medical benefits due to claimants, even while incarcerated. Contrary to the assertions of Goble/Gerber, we deem § 744 to be consistent with the quid pro quo of the WCA. The claims of Goble/Gerber that their rights to substantive due process have been violated because of § 744's failure to maintain the quid pro quo mistakenly ignores the fundamental compromise reached by the Legislature's enactment of the WCA. In exchange for no-fault recovery, employers gained the predictability of consistent workers' compensation insurance payments that would be capped in a way that personal injury tort claims were not. As such, § 744 is not an arbitrary governmental action that serves as a windfall to insurers as the Dissent suggests, but rather, is rationally related to a legitimate governmental purpose. Thus, with respect to Goble/Gerber's quid pro quo assertions, we hold that the statute does not violate their substantive due process rights.

¶44 *Issue Four: Whether § 39-71-744, MCA, violates appellants' constitutional rights to procedural due process.*

¶45 Goble/Gerber assert they were denied procedural due process because they were not informed that, as a result of their guilty pleas in their criminal proceedings, they would lose their eligibility to receive PPD benefits. Goble/Gerber argue that "at a

20

minimum" the State had a duty to notify them that they would be unable to receive PPD benefits due to their incarcerations, and the failure to notify them constituted violations of their rights to procedural due process. They assert that the notions of fair play and substantial justice that underlie the right to due process requires an individual to be informed of a loss of a right before any action is taken.

¶46 Article II, Section 17 of the Montana Constitution provides that "[n]o person shall be deprived of life, liberty, or property without due process of law." This Court has held that workers' compensation benefits are considered to be the property of the individual claimant. *Lockhart v. N.H. Ins. Co.*, 1999 MT 205, ¶ 24, 295 Mont. 467, 984 P.2d 744. "Due process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S. Ct. 893, 902 (1976) (internal quotation marks and citation omitted); *Wheelsmith Fabrication, Inc. v. Mont. Dept. of Labor & Indus.*, 2000 MT 27, ¶ 17, 298 Mont. 187, 993 P.2d 713. Specifically, procedural due process requires consideration of three distinct factors: "(1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest." *M.C. v. Dept. of Insts.*, 211 Mont. 105, 109, 683 P.2d 956, 958 (1984) (citing *Mathews*, 424 U.S. at 335, 96 S. Ct. at 903).

¶47 We are not persuaded by Goble/Gerber's argument that they were not afforded procedural due process. We first note that both Goble/Gerber were advised by letter from MSF that their PPD benefits would be terminated under the provisions of § 744.

21

Goble/Geber contested their ineligibility and the WCC conducted a hearing and considered their arguments. They were provided notice, were represented by counsel, and had an opportunity to present evidence and argument.

¶48 Additionally, when the *Mathews v. Eldridge* factors are applied, it is clear that § 744 withstands a procedural due process challenge. Goble/Gerber have failed to provide any arguments that there is any risk of an erroneous deprivation of rights. Goble/Gerber do not argue that their PPD benefits were being terminated by mistake or accident on behalf of MSF, or that had a hearing been held, they would have been able to continue receiving their PPD benefits while they were incarcerated. Instead, they argue that § 744, standing alone, is arbitrary and oppressive. Goble/Gerber have not provided sufficient argument demonstrating § 744 is unconstitutional. As the WCC noted, Goble/Gerber's ignorance of the existence of § 744 does not mean that their procedural due process rights were violated. *Wiard*, ¶ 32.

¶49 ***Issue Five: Whether § 39-71-744, MCA, violates appellants' constitutional rights to be free from the imposition of excessive fines.***

¶50 Goble/Gerber argue that § 744 violates the Excessive Fines Clause because the forfeiture of their PPD benefits is both punitive and grossly disproportional to their crimes, in that the crimes they were convicted of are unrelated to receiving workers' compensation benefits. MSF argues that the Excessive Fines Clause only pertains to criminal cases, and has no applicability to a workers' compensation case. MSF maintains that even if the Excessive Fines Clause applied, forfeiture of PPD benefits does not constitute a fine.

22

¶51     The WCC relied on *State v. Good*, 2004 MT 296, 323 Mont. 378, 100 P.3d 644, to find that § 744 does not violate Article II, Section 22 of the Montana Constitution, which prohibits the imposition of excessive fines.   In *Good*, we held that a district court's restitution order for a criminal defendant constituted a fine for the purposes of the Excessive Fines Clause, in part because "restitution is not separate from the offender's punishment but is an aspect of it."   *Good*, ¶ 22 (citing § 46-18-241, MCA, which states that "a sentencing court shall, as part of the sentence, require an offender to make full restitution").   Relying on *U.S. v. Bajakajian*, 524 U.S. 321, 328, 118 S. Ct. 2028, 2033 (1998), we found that because Good's restitution order was punitive in part, it was squarely within the purview of the Excessive Fines Clause.   We considered the relationship between the offense and the fine, and determined that the restitution order was not "grossly disproportional," and therefore did not violate the Excessive Fines Clause.

¶52     Goble/Gerber are correct in their assertion that the Excessive Fines Clause is not limited to criminal proceedings.   *State ex rel. Hardy v. State Bd. of Equalization*, 133 Mont. 43, 47-48, 319 P.2d 1061, 1063-64 (1958).   However, their argument that the forfeiture of their PPD benefits constitutes a fine for purposes of the Excessive Fines Clause is unpersuasive.   Unlike *Good*, where the defendant brought an excessive fine claim about a restitution order imposed as a part of his sentence for punitive purposes, Goble/Gerber's ineligibility for PPD benefits is a consequence of their incarceration and unrelated to the terms of the underlying sentence.   Additionally, Goble/Gerber's ineligibility for PPD benefits was neither punitive, nor an aspect of their punishment.

23

Therefore, because the forfeiture of PPD benefits does not constitute a fine, we need not discuss whether the effect of § 744 is grossly disproportional.

## CONCLUSION

¶53    For the foregoing reasons, we affirm the Order of the WCC.


/S/ LAURIE McKINNON

We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ JIM RICE


Justice Patricia Cotter, dissenting.

¶54    I dissent on the grounds that § 744 unconstitutionally violates the substantive due process rights of the claimants. The Court ignores the basic truth that disability benefits sustain not only the worker but also those who rely upon him or her for sustenance. Further, I cannot begin to agree with the Court's conclusion that "[t]he ineligibility provision of § 744 rationally advances the legitimate governmental interests of the WCA." Opinion, ¶ 37.

¶55    Section 39-71-105, MCA, contains the Legislature's "Declaration of public policy." Section 39-71-105(3), MCA, provides in pertinent part: "A worker's removal from the workforce because of a work-related injury or disease has a negative impact on the worker, the worker's family, the employer, and the general public." It can therefore fairly be argued that one of the "legitimate governmental interests" of the WCA is to relieve a worker's family from the negative impact occasioned by the worker's injury and

24

resulting disability and wage loss. However, in complete disregard of the consequences to the injured employee's family, § 744 supplements the punishment levied against the worker by the criminal justice system by stripping away benefits to which the worker has a vested right and entitlement.

¶56 In arguing against Goble and Gerber's substantive due process challenge to § 744, MSF freely concedes that the claimants are entitled to their PPD benefits. It argues, however, that "it is entirely reasonable that the legislature determined that incarceration removes **eligibility** for disability benefits, even though those persons may be **entitled** to such benefits" (emphasis in original). It is here that MSF's substantive due process analysis collapses, as does that of this Court. Goble and Gerber are indeed *entitled* to their PPD benefits. Their entitlement was fixed by MSF when it determined that Goble sustained a 20% wage loss and Gerber a 10% wage loss. MSF adopted the findings of physicians that both claimants sustained permanent whole person impairments and permanent physical restrictions. The question therefore becomes whether removing their *eligibility* for these benefits in favor of the insurer who was paid to cover the workers' impairment and loss is unreasonable, arbitrary, or oppressive.

¶57 As we said in *Newville*, "[s]ubstantive due process primarily examines the underlying substantive rights and remedies to determine whether restrictions . . . are unreasonable or arbitrary when balanced against the purpose of the legislature in enacting the statute." *Newville*, 267 Mont. at 249, 883 P.2d at 800. The restrictions in § 744 are purely punitive and cumulative of the criminal penalties already imposed upon Goble and Gerber, as the end is to punish the impaired worker for his incarceration by taking away

25

his benefits. Stripping the claimants of the impairment benefits to which they are unquestionably entitled bears no rational relation to the underlying public policy of the WCA, which is at least in part to relieve the negative impact on a worker's family occasioned as a result of the worker's injury and impairment. Section 39-71-105(3), MCA.

¶58 I cannot fathom how application of "[t]he ineligibility provision of § 744 rationally advances the legitimate governmental interests of the WCA," as this Court concludes. Opinion, ¶ 37. The money to which Goble and Gerber are *entitled* stays instead in the pockets of private insurers who received valuable consideration in exchange for providing insurance coverage. The money to which Goble and Gerber are *entitled* becomes a windfall to the insurer at the expense of the claimants' dependents who relied upon that established fund of money for child support and sustenance. Respectfully, giving money to which the claimants are entitled back to the insurance company instead of to their families does not under any stretch of logic rationally advance the legitimate governmental interests of the WCA.

¶59 For the foregoing reasons, I would conclude that § 744 is unreasonable, arbitrary, and oppressive, and that it violates the substantive due process rights of the claimants. On this basis, I would declare it unconstitutional. I dissent from our refusal to do so.


/S/ PATRICIA COTTER

Justice Michael E Wheat joins in the dissenting Opinion of Justice Patricia Cotter.


/S/ MICHAEL E WHEAT

26