FILED

February 16 2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0368

DA 15-0368

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2016 MT 35

IN THE MATTER OF:

J.H.,

      A Youth in Need of Care.

APPEAL FROM:    District Court of the Tenth Judicial District,
In and For the County of Fergus, Cause No. DN 12-07
Honorable Jon A. Oldenburg, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Julie Brown, Montana Legal Justice, PLLC; Missoula, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General, Tammy A. Hinderman,
Assistant Attorney General; Helena, Montana

          Jim Lippert, Jim Lippert Attorney at Law, P.C.; Big Timber, Montana
(Guardian Ad Litem)

          Thomas P. Meissner, Fergus County Attorney; Lewistown, Montana

          Submitted on Briefs:  January 20, 2016

          Decided:  February 16, 2016

Filed:

                            Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1　C.L. appeals from an order entered by the Tenth Judicial District Court, Fergus County, approving the Department of Public Health and Human Service's (Department) proposed permanency plan, and granting the Department long-term custody of J.H.

¶2　We address the following issues:

1. *Did the District Court err by finding the Department made reasonable efforts to reunify J.H. with C.L.?*

2. *Did the District Court err by finding that J.H.'s best interests were served by living with E.J., and not C.L.?*

3. *Did the District Court err by approving the permanency plan without first holding an age-appropriate consultation with J.H.?*

## PROCEDURAL AND FACTUAL BACKGROUND

¶3　J.H., a seven-year-old boy, is the biological child of A.H. (Mother) and C.L. (Father). Mother and Father were never married, a custody order or parenting plan was never entered, and J.H. saw Father only occasionally. When this case originated, J.H. was living in Lewistown, Montana, with Mother, Mother's boyfriend, J.H.'s half-sister B.S., J.H.'s maternal grandmother, and his grandmother's boyfriend. Father was living in Lancaster, Texas, with his girlfriend, their two children, and two of his girlfriend's children from a prior relationship.

¶4　In November 2012, the Department initiated a petition for Emergency Protective Services, for Adjudication of J.H. as a Youth in Need of Care, and for Temporary Legal Custody of J.H. The petition alleged Mother had abused and neglected J.H. by exposing him to illegal drug use and failing to protect him from her abusive boyfriend. Father was

2

served with the Department's petition, and shortly thereafter signed and filed an acknowledgement of service of the petition. Father expressed to Rose McLees (McLees), the Department social worker assigned to J.H.'s case, that he wanted custody of J.H.

¶5 At the January 2013 show cause hearing, at which Father was not present, Mother stipulated that J.H. was a Youth in Need of Care. The District Court granted the Department Temporary Legal Custody of J.H. for 180 days, including the initial plan to reunite J.H. with Mother. Shortly after the show cause hearing, Mother and Father participated by telephone in a Family Group Decision Making meeting with the Department. Father stated he wanted custody of J.H., but Mother objected to placing J.H. with Father. McLees stated she would not place J.H. with Father in Texas until Texas child authorities conducted a home study pursuant to the Interstate Compact on the Placement of Children (ICPC) and ensured Father's home was a safe environment for J.H.

¶6 The Department returned J.H. to Mother's care in February 2013, but Mother failed to comply with her treatment plan. J.H. was again removed from her care in July 2013 and returned to foster care, and the Department filed a petition to extend temporary legal custody of J.H. At the hearing, McLees stated the Department would continue to provide reunification services to Mother while simultaneously seeking a home study under the ICPC to determine whether J.H. could be placed with Father in Texas. The District Court granted the Department's extension of temporary legal custody.

¶7 In September 2013, McLees asked Texas child protective services to conduct, under the ICPC, a home study and determine whether placement with Father was viable.

3

After obtaining the results of criminal and child protective services background checks on Father, Texas authorities refused to conduct a home study. The background checks revealed Father had committed multiple crimes from 2006 to 2010, including two charges for selling dangerous drugs and an aggravated assault on his girlfriend involving a knife. Further, an incident involving Father and a girlfriend had resulted in the loss of the custody of two of his children to Texas child protective services.

¶8 The Department filed its first permanency plan proposal in January 2014, stating it would continue to attempt reunification of J.H. with Mother but would seek termination of her parental rights if she was noncompliant with her treatment plan. The concurrent plan was to place J.H. with a relative, and if no suitable relative could be found, to petition for long-term custody of J.H. and a permanent living arrangement in Montana. The permanency plan did not include the option of placing J.H. with Father, although that option had apparently not yet been ruled out by the Department. Meanwhile, Father filed a Motion for Disposition and to Dismiss, requesting the District Court place J.H. with Father as the non-custodial and non-offending parent. The District Court approved the permanency plan, but declined to rule on Father's motion at that time.

¶9 In March 2014, the Department petitioned to terminate Mother's parental rights and to extend temporary legal custody of J.H. The Department asserted that an extension of custody was necessary because, although Texas had denied an ICPC placement with Father, the Department needed additional time to determine if placement with Father could still be achieved. Father had commissioned a private home study at his own expense, and both the Department and the guardian ad litem had agreed to consider the

4

results of the private home study. The District Court terminated Mother's parental rights and granted the Department's extension of temporary legal custody, which Father did not contest.

¶10 In September 2014, Texas child authorities approved J.H.'s maternal great aunt, E.J., as a kinship placement for J.H., as well as for J.H.'s half-sister B.S., with whom J.H. was very close. E.J. resided in Texas. In October 2014, the Department filed a petition to extend temporary legal custody of J.H. Father's private home study was not yet complete and the Department wanted more time to determine whether placement with Father was viable. In the meantime, the Department planned to move J.H. and B.S. to live with E.J. in Texas, and stated that if the home study was not completed within three months, or if the home study did not recommend placement with Father, the Department would file for long-term custody of J.H. or for termination of Father's parental rights. In December 2014, J.H. and B.S. moved to live with their Great Aunt E.J. in Texas. In January 2015, Father's private home study was received. The study was inconclusive and the evaluator was unable to recommend Father as a viable placement for J.H.

¶11 The Department then filed a petition for long-term custody of J.H. and a second permanency plan, which sought placement of J.H. with E.J. under a guardianship. The District Court held a hearing on the permanency plan in February 2015. Michelle Feller (Feller), a licensed clinical professional counselor who counseled J.H. bi-weekly from September 2013 until he moved to Texas, testified J.H. was very close with B.S., and that it would be in J.H.'s best interests to stay with E.J., "for the reason of being with his sister and for the reason of being in a safe, secure, consistent environment." J.H.'s

5

guardian ad litem testified J.H.'s relationship with B.S. was critical to his well-being, that J.H. was "in an ideal place," and that there was no reason why J.H. should not be with E.J. An ICPC social worker in Texas reported J.H.'s placement with E.J. was going well, and that E.J. was providing consistency, structure, and meeting J.H.'s basic needs. The District Court approved the permanency plan but stated the approval did not preclude a later determination that the child should be placed with Father.

¶12 The District Court later held a hearing on the petition for long-term custody and Father's motion to dismiss. The testimony largely mirrored that of the February 2015 permanency plan hearing. Additionally, E.J. testified she was committed to caring for the children for the long term, explaining "[t]hey are mine. I mean I didn't birth them, but they are attached to me and I'm attached to them. It's like a blessing. They've been through so much." The District Court granted the Department's petition for long-term custody until J.H. reached the age of 18, holding that J.H. remained a youth in need of care, the Department made reasonable efforts to place J.H. with Father, it was contrary to J.H.'s best interests to be placed with Father, and J.H.'s placement with E.J. was in his best interests, particularly because B.S. also resides there. Father appeals.

**STANDARD OF REVIEW**

¶13 Whether a district court complied with the statutory requirements presents a question of law that this Court reviews for correctness. *In re H.T.*, 2015 MT 41, ¶ 10, 378 Mont. 206, 343 P.3d 159. We review a district court's finding of fact for clear error. *In re R.M.T.*, 2011 MT 164, ¶ 27, 361 Mont. 159, 256 P.3d 935 (citation omitted). A factual finding is clearly erroneous if it is not supported by substantial evidence, if the

6

court misapprehended the effect of the evidence, or if review of the record convinces the Court a mistake was made. *In re C.J.M.*, 2012 MT 137, ¶ 10, 365 Mont. 298, 280 P.3d 899 (citation omitted). We view the evidence in the light most favorable to the prevailing party when determining whether substantial credible evidence supports the district court's findings. *In re B.D.*, 2015 MT 339, ¶ 5, 381 Mont. 505, 362 P.3d 636. A district court's decision will not be disturbed on appeal unless there is a mistake of law or a finding of fact clearly erroneous that amounts to an abuse of discretion. *In re M.N.*, 2011 MT 245, ¶ 14, 362 Mont. 186, 261 P.3d 1047 (citation omitted).

## DISCUSSION

¶14    Under § 41-3-445(8)(e)(v), MCA, a district court may approve a permanency plan and grant long-term custody of the child in a planned permanent living arrangement if it is established by a preponderance of the evidence that:

> (A)  the child has been adjudicated a youth in need of care;
>
> (B)  the department has made reasonable efforts to reunite the parent and child, further efforts by the department would likely be unproductive, and reunification of the child with the parent or guardian would be contrary to the best interests of the child;
>
> (C)  there is a judicial finding that other more permanent placement options for the child have been considered and found to be inappropriate or not to be in the best interests of the child; and
>
> (D)  the child has been in a placement in which the foster parent or relative has committed to the long-term care and to a relationship with the child, and it is in the best interests of the child to remain in that placement.

7

¶15 Father argues the District Court violated the statute in two ways. First, Father argues the Department did not engage in reasonable efforts to reunify J.H. with Father because its efforts consisted solely of the ICPC request. Second, Father argues the District Court's finding that J.H.'s best interests were served by living with E.J., and not Father, was clearly erroneous because it was not supported by substantial evidence.[1]

¶16 *1. Did the District Court err by finding the Department engaged in reasonable efforts to reunify J.H. with* Father*?*

¶17 The determination of whether the Department made "reasonable efforts" to reunify a family requires that "each case [] be evaluated on its own facts." *In re K.L.*, 2014 MT 28, ¶ 41, 373 Mont. 421, 318 P.3d 691. The term is not defined by statute, but "clearly the statute does not require herculean efforts." *In re K.L.*, ¶ 41. Rather, "the child's health and safety are of paramount concern," when determining what efforts are required. Section 41-3-423(1), MCA; *see also In re K.L.*, ¶ 41 (citing "the child's need for permanency and stability" in considering whether the Department's efforts were reasonable).

---

[1] We initially note that the parties do not dispute that the District Court's order approving the permanency plan and granting the Department long-term custody of J.H. is an appealable order. The Montana Rules of Appellate Procedure designate as not appealable orders of *temporary* custody in abuse and neglect proceedings. Mont. R. App. P. 6(5)(c); *see also In re S.S.*, 2012 MT 78, ¶ 10, 364 Mont. 437, 276 P.3d 883. We have defined an appealable order as "one which constitutes a final determination of the rights of the parties; any judgment, order or decree leaving matters undetermined is interlocutory in nature and not a final judgment for purpose of appeal." *In re Matter of D.A.*, 2003 MT 109, ¶ 13, 315 Mont. 340, 68 P.3d 735; *see also* M. R. App. P. 4(1)(a). The long-term custody order and permanency plan entered herein give the State the power to infringe upon Father's fundamental liberty interest in parenting until J.H. reaches 18, and cannot be said to be interlocutory.

¶18     The parties and the Guardian ad litem also argue concerning the proper application of the ICPC in this case. Under the ICPC, which Montana has joined by statute and for which the Department has adopted by rule the regulations of the Association of Administrators of the ICPC (AAICPC), neither a state court nor a child protective services agency may send a child to another state until the public authorities in the receiving state notify the sending state that "the proposed placement does not appear to be contrary to the interests of the child." Section 41-4-101, MCA, Art. III, § 4; Mont. Admin. R. 37.50.901. An open dependency and neglect case requires compliance with Article III of the ICPC unless (1) the court places the child with a parent from whom the child was not removed, (2) the court has no evidence the parent is unfit and seeks none from the receiving state, and (3) relinquishes jurisdiction over the child immediately upon placement with the parent. AAICPC Reg. 3, §§ 2(b), 3(a). After finding a child is a youth in need of care, a district court may dismiss the proceeding—ending the Department's obligations and the applicability of the ICPC—and order placement with the noncustodial parent to protect the welfare of the child. Section 41-3-438(3)(d), MCA.

¶19     The Department argues its efforts were reasonable because as long as the case remained open it was required to follow the ICPC, which precluded placement with Father until Texas approved the placement. Father responds that the Department could have simply agreed to dismiss the case, which would have made the ICPC inapplicable, and placed J.H. with Father pursuant to § 41-3-438(3)(d), MCA. Father further argues the Department did not "set out any goals or objectives that could have resulted in J.H.'s placement with Father." We agree with the Department.

9

¶20 The very goal of the Department's ICPC request to Texas child services was to determine whether placing J.H. with Father was viable. When Texas denied the request after conducting a criminal background check and child protective services background check, the Department was left only two avenues to place J.H. with Father: dismissal of the case under § 41-3-438(3)(d), MCA, to remove the applicability of the ICPC, or establish Father met the exception under AAICPC Reg. 3, § 3(a). That exception could not be satisfied because the District Court had evidence before it that Father was potentially unfit, including that Father had dealt crack cocaine and was party to a domestic violence incident involving a knife.[2] The Department investigated the possibility of placing J.H. with Father—by dismissal under § 41-3-438(3)(d), MCA— when it agreed to consider the results of the private home study commissioned by Father This effort to reunite J.H. with Father also proved futile when the examiner of that study could not recommend placement with Father. Although Father had apparently made progress, the Department was understandably reluctant to agree that dismissal and placement with Father would protect the welfare of J.H., given Father's recent criminal history and the failure to be approved by his private home study. At that point, the Department had exhausted the three main avenues to place J.H. with Father, and began seeking an alternative, stable, placement that was in J.H.'s best interests. The Department's efforts to reunify J.H. with Father constituted reasonable efforts under these facts.

---

[2] Father was still on felony probation for these offenses when this case began.

10

¶21 *2. Did the District Court err by finding that J.H.'s best interests were served by living with E.J., and not* Father*?*

¶22 Father argues the District Court was required to explicitly find he was an "unfit" parent before it could determine whether J.H.'s best interests were served by living with his Great Aunt E.J., and that there was no substantial evidence supporting the District Court's finding that it was in J.H.'s best interests to live with E.J., and not with Father. The Department counters that a finding of "unfitness" is not required in a long-term custody proceeding, and that the District Court's findings were supported by substantial evidence. We agree with the Department.

¶23 Nothing in the statutes or our precedents suggests a district court must explicitly find a parent is unfit before it may determine the best interests of the child in a long-term custody proceeding. It is correct that we have adopted the presumption that the best interests of a child are served in the custody of the natural parents. *In re Guardianship of J.R.G.*, 218 Mont. 336, 342, 708 P.2d 263, 267 (1985). Further, § 41-3-445(8)(e)(v)(B), MCA, requires that a district court find "reunification of the child with the parent or guardian would be contrary to the best interests of the child," thus codifying and applying this presumption to long-term custody proceedings. But nowhere is it suggested a district court must find more than this before ordering an alternative placement in a long-term custody proceeding. We reject Father's position that the District Court erred as a matter of law by not explicitly finding that Father was "unfit" before determining it was in J.H.'s best interests to be placed with E.J.

11

¶24 Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion, even if weak and conflicting. *Siebken v. Voderberg*, 2015 MT 296, ¶ 12, 381 Mont. 256, 359 P.3d 1073. It consists of more than a mere scintilla of evidence but may be less than a preponderance. *Marriage of Schmitz*, 255 Mont. 159, 165, 841 P.2d 496, 500 (1992).

¶25 There was significantly more than a "scintilla" of evidence supporting the District Court's finding that J.H.'s best interests were served by a placement with E.J. and not Father. Feller testified it was in J.H.'s best interests to stay with E.J., "for the reason of being with his sister and for the reason of being in a safe, secure, consistent environment." The guardian ad litem testified it was critical J.H. reside in the same place as B.S., calling the placement with E.J. an "ideal place" for J.H.'s well-being. E.J. herself testified and committed to the long-term care of J.H. and B.S., stating "they are attached to me, and I'm attached to them." The Texas social worker reported E.J. was providing consistency, structure, and meeting J.H.'s basic needs. In contrast, the District Court had evidence before it that Father had sold crack-cocaine, been in a domestic violence incident, and had been in a dispute that resulted in two of his children being taken away by Texas child services. A reasonable mind could well weigh these facts and conclude it was in J.H.'s best interests to live with E.J., and not with Father. The District Court's findings were therefore not clearly erroneous.

¶26 It is worth noting that Father's parental rights to J.H. were not terminated in this proceeding, that he lives relatively close to where J.H. is residing with E.J. in Texas, and that he may well have an opportunity to further his relationship with J.H. in the future.

¶27 *3. Did the District Court err by approving the permanency plan without first holding an age-appropriate consultation with J.H.?*

¶28 Father argues the District Court failed to hold an age-appropriate consultation with J.H. prior to approving the Department's second permanency plan as required by § 41-3-445(4), MCA. However, Father failed to raise this issue before the District Court. "[I]t is well settled that issues raised for the first time on appeal will not be reviewed." *In re Transfer Terr. From Poplar Elem. Sch. Dist. No. 9 to Froid Elem. Sch. Dist. No. 65*, 2015 MT 278, ¶ 18, 381 Mont. 145, ___ P.3d ___ (citation omitted). This issue is therefore not properly before us for review. *Poplar*, ¶ 13.

¶29 Affirmed.

/S/ JIM RICE

We concur:

/S/ MICHAEL E WHEAT
/S/ LAURIE McKINNON
/S/ PATRICIA COTTER
/S/ BETH BAKER

13