NOT DESIGNATED FOR PUBLICATION

No. 116,293

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of
J.L., A.Y., and P.Y.

MEMORANDUM OPINION

Appeal from Johnson District Court; KATHLEEN SLOAN, judge. Opinion filed May 5, 2017. Affirmed.

*Richard P. Klein*, of Olathe, for appellant natural mother.

*Shawn E. Minihan*, assistant district attorney, and *Stephen M. Howe*, district attorney, for appellee.

Before GARDNER, P.J., PIERRON and ATCHESON, JJ.

*Per Curiam*: Mother appeals the district court's termination of her parental rights for the second time. After this court reversed the district court's earlier termination of parental rights, Mother failed to complete her reintegration plan, moved to Texas, and says she cannot return to Kansas and that she has no intention of doing so in the future. Based on the facts of record, we affirm the termination of parental rights.

*The Initial Termination Proceeding*

Mother is the biological mother of all three children. Both fathers have had their parental rights terminated. Neither father is a party to this appeal.

1

In November 2012, the State filed petitions alleging that the children were in need of care. The same day, the court held a temporary custody hearing and placed the children in foster care. *In re J.L.*, No. 110,993, 2014 WL 4627604, at *2 (Kan. App. 2014) (unpublished opinion). Mother does not dispute this original removal of the children. In October 2013, the district court terminated the parental rights of Mother and J.L.'s father. They have not seen the children since that date.

In its October 2013 order, the district court found: (1) the children were in need of care, (2) a formal reintegration plan was not viable, (3) both parents were unfit to be parents, (4) their unfitness was unlikely to change in the foreseeable future, and (5) it was in the best interests of the children to terminate their parental rights. 2014 WL 4627604, at *3. Mother and J.L.'s father appealed. In September 2014, the Kansas Court of Appeals reversed the determination of unfitness as to both of them and remanded the case to the district court. 2014 WL 4627604, at *6-11. It did not disturb the finding that the children were in need of care.

In either late August or early September 2014, the parents moved from Kansas to Sulphur Springs, Texas, because they were struggling financially and wanted to be closer to family who could support them. Mother testified that she was not able to move back to Kansas and had no plans to do so in the future. She lives about 8 hours from her children's foster care placement. Father testified that it was not feasible for the parents to move back to Kansas.

After the Kansas Court of Appeals remanded the case to the district court on September 12, 2014, the district court made several orders. One was that contact between the children and the parents "occur as deemed therapeutically appropriate." But the therapists did not deem visitations appropriate.

Therapists working with the children determined that it would not be in the best interests of P.Y. and J.L. to have visits with the parents. A.Y. has Asperger's Syndrome and wants no change. Carol Moddelmog, a marriage and family therapist who worked with P.Y. and J.L., based that determination on her observations that the children "had kind of closure and had felt like they had bonded with the [foster family]." Additionally, Moddelmog thought it would be detrimental for the children to have visits with the parents.

Richard Burnett, a counselor who owns and operates Family Care Center in Junction City, Kansas, gave the most recent professional opinion as to whether the children should visit with the parents and whether the children should be reintegrated with them. He began providing therapeutic services to all of the children in July 2015. Burnett had a session with each child, individually, once a month. According to Burnett, the children should not be disrupted from their current placement and visitation with the parents would be disruptive. It was his opinion that J.L., the youngest of the three, had not significantly bonded with the parents.

On remand, the district court also ordered completion of an expedited placement assessment under Regulation 7 of the Interstate Compact on Placement of Children (ICPC), since the parents had moved to Texas. The general purpose of the ICPC is to protect children who are subject to placement in another state. But the State of Texas denied the ICPC placement request for the following reasons: Mother lacked stable housing, there was a strong odor of tobacco in the home, there was no furniture in the home, Mother had no insurance for their vehicle, expenses showed the parents lacked the financial ability to care for the children, the parents had chaotic and unstable childhoods but lacked insight about how their childhoods affected their parenting, the parents had a history of arrests, and the parents had a history with Texas Child Protective Services, which had removed the children from the home for 2 years (2009-2011) before Mother moved to Kansas.

3

On remand, the district court also issued a reintegration plan which required fairly typical tasks. That reintegration plan was "in effect" on November 13, 2014, and expired 90 days later. But the parents did not complete the reintegration plan. Although the district court never formally extended the reintegration period, KVC encouraged the parents to continue working on the reintegration plan even after 90 days had passed.

On June 15, 2016, the district court terminated the parents' parental rights for the second time. The court found clear and convincing evidence that the parents were unfit, that the parents' unfitness was unlikely to change in the immediate or foreseeable future, and that termination of the parental rights was in the best interests of the children who were now stable and "thriving." The district court noted that "few tasks on the reintegration plan were begun, let alone accomplished." Mother has appealed.

*Was the district court's determination that the Mother was unfit and would remain unfit supported by clear and convincing evidence?*

*Our standard of review*

When this court reviews a district court's termination of parental rights, we consider "whether, after review of all the evidence, viewed in the light most favorable to the State, it is convinced that a rational factfinder could have found it highly probable, *i.e.*, by clear and convincing evidence, that [the parent's rights should be terminated]." *In re B.D.-Y.*, 286 Kan. 686, 705, 187 P.3d 594 (2008). In *B.D.-Y.*, the court explained that "clear and convincing evidence" requires the factfinder to believe "that the truth of the facts asserted is highly probable." 286 Kan. at 697.

The district court terminated Mother's parental rights under K.S.A. 2016 Supp. 38-2269 on the following grounds: subsection (b)(1) (mental and emotional illness); subsection (b)(7), failure of reasonable efforts made by appropriate agencies to

4

rehabilitate the family; subsection (b)(8), lack of effort on the part of the parent to adjust the parent's circumstances, conduct or conditions to meet the needs of the child; and subsection (c)(3), failure to carry out the reintegration plan. These factors tacitly reflect the fact that "incapacity to appreciate and perform the obligations resting upon parents might render them unfit, apart from other moral defects." *Application of Vallimont*, 182 Kan. 334, 340, 321 P.2d 190 (1958). Any one of the factors may, but does not necessarily, establish grounds for terminating a parent's rights. See K.S.A. 2016 Supp. 38-2269(f). The district court is not limited to the statutory factors in making a determination of unfitness. See K.S.A. 2016 Supp. 38-2269(b).

The State also argues that the district court's determination that Mother is unfit can be supported on grounds of physical and mental abuse under K.S.A. 2016 Supp. 38-2269 (b)(2). But the district court did not base its decision of unfitness on that ground, and we find it unnecessary to address it on appeal.

*Subsection (b)(1)*

Mother contends that the district court erred in relying on her 2013 psychological evaluation because the same evidence was considered by this court in the prior appeal. The district court's order, as related to this factor, found solely that "[n]either parent has even begun to address the serious and significant mental health and parenting concerns which were outlined in their individual psychological evaluations and parenting assessments done in 2013."

In Mother's previous appeal, this court reviewed Mother's 2013 psychological evaluation. It stated that Mother had been diagnosed with a bipolar disorder in the past but did not reflect a current diagnosis of bipolar disorder. Her current diagnoses were posttraumatic stress disorder (chronic) and personality disorder (not otherwise specified, with borderline and histrionic features). This court found insufficient evidence based on

5

that evaluation to conclude that Mother was an unfit parent because of mental illness. *In re J.L.*, 2014 WL 4627604, at *6. Mother contends that the "law of the case" doctrine precludes any use of that psychological evaluation and points to her testimony after remand that she had another evaluation done while living in Texas and that it had no recommendations for services for her.

Nothing in our previous finding that the evidence was insufficient means that the evidence was unreliable or could not be included in a totality of the circumstances analysis of Mother's fitness in the future. Nonetheless, the district court did not address Mother's subsequent evaluation in Texas, or the fact that it had no recommendations for services. The parties have not shown us other evaluations relevant to Mother's emotional or mental illness. Accordingly, we do not find substantial evidence supporting the district court's finding that termination was warranted because of Mother's emotional and mental illness of such duration which renders her unable to care for the needs of her children.

*Subsections (b)(7), (b)(8), and (c)(3)*

We next consider the district court's other bases for finding that termination was appropriate. The district court found the failure of numerous and extensive efforts made to try to reintegrate the family. See K.S.A. 2016 Supp. 38-2269(b)(7) (permitting a finding of unfitness when clear and convincing evidence shows that the parent has failed reasonable efforts made by appropriate public or private agencies to rehabilitate the family). Similarly, K.S.A. 2016 Supp. 38-2269(c)(3) permits a district court to find unfitness where, as here, the child is not in the parent's physical custody and clear and convincing evidence shows that the parent has failed to carry out a reasonable plan approved by the court directed toward the integration of the child into a parental home. The district court found that reasonable efforts by the agency to reintegrate the family had failed and Mother had failed to carry out a reasonable plan of reintegration.

6

Mother contends that the reintegration plan was not reasonable and that KVC's efforts were not reasonable. The State argues that this court should not consider this issue because Mother did not raise the issue of unreasonableness before the district court and does not explain on appeal why the issue was not raised before the district court, as our rules require. See Supreme Court Rule 6.02(a)(5) (2017 Kan. S. Ct. R. 34). But here, the burden rests on the State to prove, by clear and convincing evidence, the "failure of *reasonable efforts* made by appropriate public or private agencies to rehabilitate the family," under K.S.A. 2016 Supp. 38-2269(b)(7), and "failure to carry out a *reasonable plan* approved by the court directed toward the integration of the child into a parental home," under K.S.A. 2016 Supp. 38-2269(c)(3). (Emphasis added.) Mother does not have the burden to show the plan was unreasonable.

Mother does not clearly specify how she believes the reintegration plan she received postremand was unreasonable, but her arguments focus primarily on two factors. First, she contends that the plan gave her only 90 days in which to complete the "fairly typical tasks," such as maintaining adequate housing, completing a mental health intake and following its recommendations, maintaining employment, etc. She contends this was unreasonable because she had not seen her children for a year, her children had been told their mother's parental rights had been terminated, and she had moved to Texas before her case was reversed. But Mother does not argue why the fact that she had not seen her children in so long or the fact that she had moved to Texas rendered the typical tasks unreasonable. Although the record shows that her oldest son had been told that her parental rights had been terminated, no support has been shown for Mother's assertion that her other two sons also knew that fact. But none of these matters would prevent Mother from completing the typical tasks required by her reintegration plan within 90 days or the longer period she was actually given in which to complete them.

Second, Mother contends that although the plan included visitation guidelines, a court order required "[no] contact between children and parents until deemed

7

therapeutically appropriate and then to be done in a therapeutic setting." She contends that reintegration could never occur because each of the children's therapists stated they would never recommend visitation with the parents, even though they had not met with or spoken to the parents. The assertion that the therapists had never spoken to the parents is not supported with citation to the record.

Mother also contends KVC did "virtually nothing" to help her find housing, transportation, or employment. But Mother nonetheless found housing, transportation, and employment. Those were not her primary issues. Mother gives one specific example of KVC's lack of effort: When Dalene Smith tried to get Mother's mental health intake from Texas, Smith called the provider to ask for it and gave them her fax number. Smith never received the information but testified Mother had not completed that portion of her reintegration plan. But the citations to the record do not support that conclusion and are, in fact, to another person's testimony on another topic. The appellant has failed in her duty to designate the record in a sufficient manner to show the error alleged. *State v. Walters*, 284 Kan. 1, 15, 159 P.3d 174 (2007). But even had the assertions been supported by the record, an agency is not required to exhaust all its resources to rehabilitate a parent, or make a "'herculean effort'" to reintegrate a parent. *In re S.C.*, No. 107,950, 2012 WL 5392188, at *3 (Kan. App. 2012) (unpublished opinion) (citing *In re B.K.S., Jr.*, No. 95,297, 2006 WL 2443937, at *2 [Kan. App. 2006] [unpublished opinion]).

We have reviewed the record in light of Mother's assertions of unreasonableness, but we find that both the reintegration plan itself and KVC's efforts to rehabilitate Mother were reasonable. We agree that clear and convincing evidence supports the district court's finding of unfitness under subsections (b)(7), (b)(8), and (c)(3). The district court noted, accurately, that although the termination trial began on August 12 and 13, 2015, it was continued until January 22, 2016, and Mother made little, if any, progress during the intervening time. As of the latter date, she had failed to complete the reintegration plan

because she (1) did not submit monthly budgets, (2) did not notify KVC of a residence change within 72 hours, (3) did not complete parenting classes, (4) did not provide proof of driver's license, stable transportation, or car insurance, (5) failed to complete a mental health intake within the 90-day period, and (6) failed to submit to some of the UA tests as required. Although the reintegration plan was officially for a 90-day period, the district court essentially gave Mother 14 months to show that she could parent safely and appropriately before deciding to terminate her parental rights.

Mother did make some efforts to adjust her circumstances to meet her children's needs. After moving to Texas, she was consistently employed, working at a grocery store, Pizza Hut, and IHOP. Mother leased a house, underwent a second psychological evaluation, regularly submitted pay stubs, found parenting classes, and submitted to some urinalysis tests.

But Mother's contention that she "did everything that was asked of her" and was in the process of completing any remaining tasks is not supported by the record. The tasks required by the reintegration plan were not unusual and were within Mother's ability to complete. Martha Grace Reynolds, the case manager at the time the district court heard testimony, testified that in her opinion, it was unlikely that Mother would make necessary changes. Reynolds believed that Mother was not giving a full effort to accomplish the tasks required by the reintegration plan. Mother's assertion that she would complete the tasks if given more time is also unsupported. Mother was given time during the continuance of the termination trial, as well as time after the 90-day rehabilitation plan expired, yet failed to compete the typical tasks.

Additionally, a practical problem exists in this case that does not exist in most. The children are living in foster care in Kansas. Mother lives in Texas and testified that she is not "available" to return to Kansas and has no plans to do so in the future. Texas declined the ICPC placement request. The latter fact does not, however, weigh heavily in

9

our analysis. See *In re S.R.C.-Q.*, 52 Kan. App. 2d 454, 367 P.3d 1276 (2016) (finding ICPC applies only to out-of-state placements of children with foster care or as a preliminary to a possible adoption, not to out-of-state placements with a parent). But see *M.A.C. v. Florida Dept. of Children and Families*, 73 So. 3d 327 (Fla. Dist. App. 2011) (finding court erred in dependency action by terminating supervision and permanently placing child with her father, who lived out of state, before the ICPC requirements were satisfied); *In re J.H.*, 2016 MT 35, 382 Mont. 214, 367 P.3d 339 (2016) (finding agency made reasonable efforts to reunify child with noncustodial, out-of-state father by making ICPC request to father's state to determine whether placing child with father was viable, which was denied after father's state conducted criminal background check). Nonetheless, Mother's testimony that she has no intention of moving back to Kansas shows these unusual circumstances are not likely to change in the foreseeable future.

Viewing the evidence in the light most favorable to the State, we are convinced that a rational factfinder could have found it highly probable by clear and convincing evidence that Mother was legally unfit to be a parent.

> "Cases like this are difficult ones. A parent may be labeled 'unfit' under the law even though he or she loves the child and wants to do the right thing, which may be the case here. But we must judge these cases based mostly upon actions, not intentions, and we must keep in mind that a child deserves to have some final resolution within a time frame that is appropriate from that child's sense of time." *In re A.A.*, 38 Kan. App. 2d 1100, 1105, 176 P.3d 237 (2008).

*Did the district court abuse its discretion in finding termination to be in the best interests of the children?*

Mother argues that it is not possible to know what is in the best interests of the children because the State, guardian ad litem, and KVC never gave Mother a chance to reintegrate the family because they restricted visitation. Additionally Mother claims that

10

the district court abused its discretion by failing to consider the mental, physical, and emotional needs of the children. Mother acknowledged that the children were doing great at the foster home but suggests that the children's wellbeing is a result of the children being placed together. Mother argues that she should not be punished because the district court erred when it first terminated her parental rights, despite her admission that it would be difficult for the children to readjust to living with the parents.

The district court is in the best position to make findings on the best interests of the child, and its judgment will not be disturbed in the absence of an abuse of judicial discretion. See *In re Marriage of Rayman*, 273 Kan. 996, 999, 47 P.3d 413 (2002). A judicial action constitutes an abuse of discretion if the action (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013). When determining if terminating parental rights is in the best interests of a child, "the court shall give primary consideration to the physical, mental and emotional health of the child." K.S.A. 2016 Supp. 38-2269(g)(1).

Before being placed in foster care, P.Y. and A.Y. had behavioral problems. While in Mother's custody, A.Y. would hit himself in the head and bite his hands when stressed. When at school, A.Y. would spit, call other students names, throw books, and break pencils. P.Y. had issues with nightmares and chronically wetting the bed. Since the children have been placed with the foster parents, the children have improved behaviorally and emotionally. All three of the children wished to be adopted by the foster parents. The most recent evaluation of the children in the record states that the children should not be disturbed in their current placement. Based on the facts of record, we find no abuse of discretion in the district court's determination that termination of Mother's parental rights is in the best interests of the children.

Affirmed.