FILED

01/17/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: OP 22-0621

OP 22-0621

# IN THE SUPREME COURT OF THE STATE OF MONTANA

2023 MT 7

A.J.B. and O.F.,

     Petitioners,

  v.

MONTANA EIGHTEENTH JUDICIAL
DISTRICT COURT, GALLATIN COUNTY,
HON. ANDREW J. BREUNER, Presiding,

     Respondent.

ORIGINAL PROCEEDING: Petition for Writ of Supervisory Control
                             In and For the County of Gallatin, Cause No. DN-16-2022-027-YC
                             Honorable Andrew J. Breuner, Presiding Judge

COUNSEL OF RECORD:

     For Petitioners:

          Ryan "Buddy" Rutzke, Office of the State Public Defender, Bozeman, Montana

          Kelly M. Driscoll, Public Defender, Missoula, Montana

     For Respondent:

          Austin Knudsen, Montana Attorney General, Bjorn Boyer, Assistant Attorney General, Helena, Montana

          Hon. Andrew J. Breuner, Self-represented, Bozeman, Montana

                            Decided:  January 17, 2023

Filed:

                         _____
                                     Clerk

Justice Ingrid Gustafson delivered the Opinion and Order of the Court.

¶1 Petitioner A.J.B., on behalf of herself and her minor child O.F., seeks a writ of supervisory control to reverse the October 25, 2022 Opinion and Order Re Request for EPS Hearing of the Eighteenth Judicial District Court, Gallatin County, in its Cause No. DN-22-27D. In that Order, the District Court denied A.J.B.'s request for an emergency protective services (EPS) hearing to which she would otherwise be entitled under § 41-3-306(1)(a), MCA, because the court determined that § 41-3-306(7)(b), MCA,[1] barred such hearing in dependent-neglect cases that implicate the Indian Child Welfare Act (ICWA). The court further denied A.J.B.'s constitutional challenge to that statute. At our invitation, the State of Montana and the District Court have responded to A.J.B.'s petition.

¶2 We consider the following issues:

*1. Is this matter appropriate for a writ of supervisory control?*

*2. Does § 41-3-306(7)(b), MCA, which excepts cases subject to the Indian Child Welfare Act (ICWA) from eligibility for emergency protective services hearings in dependent-neglect cases, violate the constitutional right to equal protection of the law?*

### FACTUAL AND PROCEDURAL BACKGROUND

¶3 On October 20, 2022, the Child and Family Services Division of the Montana Department of Health and Human Services (Department) removed O.F., a minor, from the

---

[1] Section 41-3-306, MCA (2021), is a temporary statute that terminates June 30, 2023. On July 1, 2023, § 41-3-306, MCA (2023), becomes effective; § 41-3-306(7)(b), MCA (2021), will become § 41-3-306(7), MCA (2023).

2

care of his mother A.J.B. on an emergency basis. The Department alleged its reasons for removal were "physical neglect based on domestic violence, family will flee."

¶4     A.J.B. immediately sought counsel from the Office of Public Defender. On October 21, 2022, A.J.B., via counsel, filed Mother's Request for EPS Hearing, Challenge to Constitutionality of ICWA Exemption, and Preliminary Legal Memo in the District Court. In that filing, A.J.B. asked the court to immediately set an EPS hearing to allow her to challenge O.F.'s removal, as provided in § 41-3-306(1)(a), MCA ("If requested by the parents . . . a district court shall hold an [EPS] hearing within 5 business days of the child's removal to determine whether to continue the removal beyond 5 business days."). A.J.B. further alleged there was reason to believe O.F. may be an Indian child[2] within the meaning of the ICWA, a federal law that governs the removal and out-of-home placement of American Indian children. She argued the Department was unable to meet its burden to prove O.F.'s removal was necessary under the ICWA standard.

¶5     However, A.J.B. also acknowledged § 41-3-306(7)(b), MCA, provides that § 41-3-306(1)(a), MCA, does not apply to cases involving an Indian child who is subject to ICWA. She asserted the Montana Legislature enacted § 41-3-306(7)(b), MCA, because it misunderstood ICWA's notice requirements and argued this provision is unconstitutional as a violation of equal protection of the law and due process rights to fundamentally fair

---

[2] "Indian child" means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe. 25 U.S.C. § 1903(4).

procedures and review, without unreasonable delay, of the suspension of the fundamental right to parent.

¶6 On October 25, 2022, the District Court issued an Opinion and Order Re Request for EPS Hearing (Order), in which it denied A.J.B.'s request for an EPS hearing. The court ruled A.J.B. was not entitled to an EPS hearing because of § 41-3-306(7)(b), MCA. The court further determined the plain language of § 41-3-306(7)(b), MCA, supports ICWA's fundamental purposes as well as the role of Montana's dependent-neglect statutes in accommodating those purposes. The court concluded that holding an EPS hearing in contravention of § 41-3-306(7)(b), MCA, would risk interfering with the mandatory notice to tribes ICWA requires.

¶7 After the District Court denied her motion, A.J.B. filed this petition for writ of supervisory control in this Court.

## STANDARD OF REVIEW

¶8 Supervisory control is an extraordinary remedy that may be invoked when the case involves purely legal questions and urgent or emergency factors make the normal appeal process inadequate. M. R. App. P. 14(3). The case must meet one of three additional criteria: (a) the other court is proceeding under a mistake of law and is causing a gross injustice; (b) constitutional issues of state-wide importance are involved; or (c) the other court has granted or denied a motion for substitution of a judge in a criminal case. M. R. App. P. 14(3)(a)-(c). Whether supervisory control is appropriate is a case-by-case decision. *Stokes v. Mont. Thirteenth Judicial Dist. Court*, 2011 MT 182, ¶ 5, 361 Mont. 279, 259 P.3d 754 (citations omitted). Consistent with Rule 14(3), this Court refrains from

4

exercising supervisory control when the petitioner has an adequate remedy of appeal. *Volkswagen Aktiengesellschaft v. Mont. First Judicial Dist. Court*, No. OP 20-0171, 401 Mont. 556, 472 P.3d 1151 (Aug. 25, 2020). Such writ is available "[o]nly in the most extenuating circumstances." *State ex rel. Ward v. Schmall*, 190 Mont. 1, 4, 617 P.2d 140, 141 (1980).

## DISCUSSION

¶9 *1. Is this matter appropriate for a writ of supervisory control?*

¶10 As a threshold matter, we first must determine whether we should accept A.J.B.'s petition. In its response, the State agrees with A.J.B. that this Court should accept supervisory control. However, the District Court disagrees. The court asserts the issue is moot as to A.J.B.'s case because more than five business days have elapsed since O.F.'s removal and the time for an EPS hearing has passed. It argues that it is irrelevant if this moot issue may nonetheless be appropriately considered under an exception to the mootness doctrine because an otherwise moot matter cannot create the urgent or emergency situation that supervisory control requires under M. R. App. P. 14(3). The court argues, "the principle of mootness is antithetical to the writ because there is no redress to effectively address the alleged exigency."

¶11 In support of its argument, the court cites to five previous instances in which this Court denied a petition for writ of supervisory control due to mootness. However, none of those instances implicated exceptions to the mootness doctrine. Rather, in each of these cases the controversy that spurred the petition for writ was resolved before this Court made a determination. *Benefis Hosp. Inc. v. Mont. Eighth Judicial Dist. Court*, No. OP 18-0643,

5

Order (Mont. Nov. 20, 2018) (dispute over deposition was moot because parties resolved dispute after petition was filed); *Mulkey v. Eighteenth Judicial Dist. Court*, No. OP 17-0598, 390 Mont. 424, 410 P.3d 173 (Oct. 24, 2017) (supervisory control denied as moot where disputed issues were resolved prior to the Court considering the writ); *First Interstate Bank v. Mont. Fourth Judicial Dist. Court*, No. OP 14-0658, 377 Mont. 434, 348 P.3d 170 (Nov. 12, 2014) (supervisory control denied as moot where district court had already revised the judgment at issue); *Evert v. State*, No. OP 13-0056, Order (Mont. Mar. 12, 2013) (supervisory control denied as moot where district court ruling resolved issue while petition pending); *Jensen v. Macek*, No. OP 06-0797, Order (Mont. Dec. 20, 2006) (supervisory control denied where the underlying case was dismissed while disposition of petition pending). None of these cases are analogous to the present case.

¶12 Conversely, we have exercised supervisory control in a matter that was reviewable under an exception to the mootness doctrine. In *Wier v. Lincoln Cty. Sheriff's Dep't*, 278 Mont. 473, 925 P.2d 1172 (1996), Wier was convicted of two misdemeanors and sentenced to five days in jail by a Justice of the Peace. He appealed his conviction to District Court on the day he was sentenced, but the Justice of the Peace refused to stay execution of the sentence. *Wier*, 278 Mont. at 475, 925 P.2d at 1173. The following day, after the District Court also refused to stay execution of the justice court sentence, Wier petitioned this Court for a writ of habeas corpus; although this Court ultimately issued an order staying the remainder of Wier's sentence, it did not do so until four days later, by which time Wier had been released as he had served his sentence. *Wier*, 278 Mont. at 475, 925 P.2d at 1173.

¶13     At that time, this Court requested the Attorney General respond and address Wier's petition. *Wier*, 278 Mont. at 475, 925 P.2d at 1173. In its response, the State argued the Court should not address the substantive issues Wier had raised because he was no longer in custody and thus his petition for writ of habeas corpus was moot. *Wier*, 278 Mont. at 475, 925 P.2d at 1173. Because this Court determined the issue Wier presented was "capable of repetition, yet evading review," and because it implicated Wier's constitutional rights, this Court accepted jurisdiction to review the matter by writ of supervisory control pursuant to Article VII, Sections 2(1) and 2(2), of the Montana Constitution. *Wier*, 278 Mont. at 475-76, 925 P.2d at 1173-74. *Wier* is on point with the present matter and the District Court's argument to the contrary is unavailing.

¶14     The District Court next argues, even if this Court may exercise supervisory control under the mootness doctrine, it has no cause to do so here because this case does not implicate exceptions to the mootness doctrine. This Court has recognized three circumstances as exceptions to mootness: (1) voluntary cessation, (2) capable of repetition, yet evading review, and (3) public interest. *In re Big Foot Dumpsters & Containers, LLC*, 2022 MT 67, ¶ 15, 408 Mont. 187, 507 P.3d 169. Pertinent to the present case, this Court has explained the third exception, public interest, applies when (1) the case presents an issue of public importance; (2) the issue is likely to recur; and (3) an answer to the issue will guide public officers in the performance of their duties. *In re Big Foot*, ¶ 18 (citation and internal quotation omitted).

¶15     Although the District Court admits the constitutionality of § 41-3-306(7)(b), MCA, is an issue of public importance and that a ruling from this Court determining its

constitutionality would provide guidance to Montana's courts, the District Court argues the likelihood of recurrence is "uncertain" because the constitutionality of ICWA is currently before the U.S. Supreme Court. See *Brackeen v. Haaland*, 994 F.3d 249 (5th Cir. 2021), *cert. granted*, 142 S. Ct. 1205 (Feb. 28, 2022).

¶16　Regardless of how the U.S. Supreme Court may rule in the future, ICWA currently remains applicable to dependent-neglect cases in Montana that involve an Indian child. As such, the situation that affected A.J.B. and her son may recur—and we know it has occurred in at least one other instance where the Second Judicial District Court considered the same legal issue in August 2022 and concluded the statute was unconstitutional. Thus, with this District Court's ruling in A.J.B.'s case, it is apparent that parents affected by § 41-3-306(7)(b), MCA, are obtaining different results depending on where their case is heard in this state. We are also cognizant the Legislature could amend the statute in the future. However, with fundamental constitutional rights directly at issue in dependent-neglect cases concerning Indian children throughout Montana, we will not refrain from considering the matter on speculation that the applicability of our ruling will be of limited duration.

¶17　Finally, the District Court argues this matter does not meet the threshold criteria for a writ of supervisory control because no urgent or emergency factors make appeal an inadequate remedy. The court alleges that in this case, it was later determined that O.F. is not an Indian child, and A.J.B. and O.F. have been "conditionally reunited." However, as A.J.B. asserts in her petition, she does not appear to have *any* remedy on appeal for the

8

denial of her right to an EPS hearing, and the potentially erroneous loss of the right to parent, even for a short time, is a matter of great urgency.

¶18 In *State v. Mont. Eighth Judicial Dist. Court*, Nos. OP 22-0099, 22-0100, Order (Mont. Apr. 19, 2022), we held supervisory control was appropriate in a dependent-neglect case where allowing a possible instance of reversible legal error to go unchecked would prolong the litigation, which was not in the best interest of the subject child. In that case, the Department argued a delay in permanency goes against a child's best interest. Here, A.J.B. argues it is not in O.F.'s, or any child's, best interest to be kept out of the care of their natural parents unnecessarily.

¶19 We have adopted the presumption a child's best interests are served in the custody of the natural parents. *In re J.H.*, 2016 MT 35, ¶ 23, 382 Mont. 214, 367 P.3d 339 (citing *In re Guardianship of J.R.G.*, 218 Mont. 336, 342, 708 P.2d 263, 267 (1985)). In a case where a statute may act to unnecessarily delay a child's reunification with their natural parent or parents, urgency renders the normal appeal process inadequate.

¶20 We therefore conclude that it is appropriate to consider this petition for writ of supervisory control.

¶21 *2. Does § 41-3-306(7)(b), MCA, which excepts cases subject to the Indian Child Welfare Act (ICWA) from eligibility for emergency protective services hearings in dependent-neglect cases, violate the constitutional right to equal protection of the law?*

¶22 Having determined this matter may be susceptible to a writ of supervisory control, we next consider the substantive question of whether the statute at issue is unconstitutional. A.J.B. argues the statute violates the right to equal protection of the law to parents and

9

children subject to dependent-neglect proceedings under ICWA. The State agrees the provision should be stricken as unconstitutional, while the District Court takes no position beyond its procedural argument that we should not accept the petition for writ.

¶23 While A.J.B. and the State both assert § 41-3-306(7)(b), MCA, is unconstitutional, the statute nonetheless carries the presumption of constitutionality and A.J.B. thus bears the burden of proving, beyond a reasonable doubt, that it is unconstitutional. *City of Great Falls v. Morris*, 2006 MT 93, ¶ 12, 332 Mont. 85, 134 P.3d 692. Here, she asserts § 41-3-306(7)(b), MCA, explicitly treats families whose child is an Indian child, as defined by ICWA, less favorably than the families of children not subject to ICWA and it is thus impermissibly discriminatory under the U.S. and Montana Constitutions.

¶24 The Fourteenth Amendment to the U.S. Constitution provides the state shall not make or enforce laws which deny any person the equal protection of the laws. Similarly, Article II, Section 4, of the Montana Constitution provides, "The dignity of the human being is inviolable. No person shall be denied the equal protection of the laws. Neither the state nor any person, firm, corporation, or institution shall discriminate against any person in the exercise of his civil or political rights on account of race, color, sex, culture, social origin or condition, or political or religious ideas." These provisions "embody a fundamental principle of fairness: that the law must treat similarly-situated individuals in a similar manner." *Snetsinger v. Mont. Univ. Sys.*, 2004 MT 390, ¶ 15, 325 Mont. 148, 104 P.3d 445 (quoting *McDermott v. Mont. Dep't of Corr.*, 2001 MT 134, ¶ 30, 305 Mont. 462, 29 P.3d 992). Article II, Section 4, of the Montana Constitution provides even more

individual protection than does the Fourteenth Amendment to the U.S. Constitution. *Snetsinger*, ¶ 15 (citation omitted).

¶25 Equal protection guarantees that persons similarly situated with respect to a legitimate government purpose of a law receive like treatment. *Rausch v. State Comp. Ins. Fund*, 2005 MT 140, ¶ 18, 327 Mont. 272, 114 P.3d 192. This Court evaluates potential equal protection violations under a three-step process: (1) we identify the classes involved and determine if they are similarly situated; (2) we determine the appropriate level of scrutiny to apply to the challenged statute; and (3) we apply the appropriate level of scrutiny to the statute. *Satterlee v. Lumberman's Mut. Cas. Co.*, 2009 MT 368, ¶¶ 15, 17-18, 353 Mont. 265, 222 P.3d 566.

¶26 To identify the classes, we isolate the factor allegedly subject to impermissible discrimination. If the two classes are equivalent in all other respects, they are similarly situated. *Goble v. Mont. State Fund*, 2014 MT 99, ¶ 29, 374 Mont. 453, 325 P.3d 1211 (citing *Snetsinger*, ¶ 27). In the present case, A.J.B. asserts the classes—families whose children are removed by the Department on an emergency basis who are subject to ICWA and families whose children are removed by the Department on an emergency basis who are not subject to ICWA—are equivalent in all respects other than the factor that subjects them to discrimination. In the context of emergency proceedings, we agree, these classes are similarly situated.

¶27 Next, we determine the appropriate level of scrutiny to apply to § 41-3-306(7)(b), MCA. A.J.B. asserts we should apply strict scrutiny review because § 41-3-306(7)(b),

MCA, impacts the fundamental right of familial integrity. In *In re B.H.*, 2020 MT 4, ¶ 36, 398 Mont. 275, 456 P.3d 233, we held:

> In addition to the presumption the custody of a natural parent is in the child's best interests, the natural parent's right to the care and custody of his or her children is a fundamental constitutional interest protected by both the United States Constitution and the Montana Constitution. *See In re A.S.A.*, 258 Mont. 194, 197, 852 P.2d 127, 129 (1993) (citing Article II, § 17, of the Montana Constitution); *In re R.B.*, 217 Mont. 99, 102-03, 703 P.2d 846, 848 (1985); *Santosky v. Kramer*, 455 U.S. 745, 753-54, 102 S. Ct. 1388, 1394-95, 71 L. Ed. 2d 599 (1982) (citing the Due Process Clause of the Fourteenth Amendment); *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S. Ct. 1208, 1212-13, 31 L. Ed. 2d 551 (1972) (citing the Due Process Clause of the Fourteenth Amendment, the Equal Protection Clause of the Fourteenth Amendment, and the Ninth Amendment to the United States Constitution). The United States Supreme Court "has frequently emphasized the importance of the family. The rights to conceive and to raise one's children have been deemed 'essential,' 'basic civil rights of man,' and 'rights far more precious . . . than property rights.'" *Stanley*, 405 U.S. at 651, 92 S. Ct. at 1212 (internal citations omitted). Both natural parents have the constitutional right to custody of their children. *See Stanley*, 405 U.S. at 651, 92 S. Ct. at 1212 ("The private interest here, that of a man in the children he has sired and raised, undeniably warrants deference and, absent a powerful countervailing interest, protection.").

¶28 We apply strict scrutiny review if a fundamental right is affected. *Snetsinger*, ¶ 17. The right to parent one's child is a fundamental right, and we therefore apply strict scrutiny where the right to parent is implicated. *A.W.S. v. A.W.*, 2014 MT 322, ¶ 16, 377 Mont. 234, 339 P.3d 414 (citing *Snetsinger*, ¶ 16). We thus apply strict scrutiny here.

¶29 When the government intrudes upon a fundamental right, any compelling state interest for doing so must be closely tailored to effectuate only that compelling interest. *State v. Pastos*, 269 Mont. 43, 47, 887 P.2d 199, 202 (1994). Whether a compelling state interest exists is a question of law. *Pastos*, 269 Mont. at 47, 887 P.2d at 202. Neither

A.J.B., the State, nor the District Court have identified a compelling state interest to justify the disparate treatment § 41-3-306(7)(b), MCA, imposes upon families subject to ICWA.

¶30 Both A.J.B. and the State assert the Legislature enacted this provision because it misunderstood ICWA's notice requirements. The State explains while § 41-3-306(1)(a), MCA, allows a parent to request an EPS hearing to occur within five business days of the child's removal, § 41-3-306(7)(b), MCA, excludes cases involving a child subject to ICWA from that requirement because the Legislature believed the courts could not hold an EPS hearing within five business days of removal of an Indian child since 25 U.S.C. § 1912 provides the tribe must be given notice at least ten days before a foster care placement hearing. Mont. House Jud. Comm., 2021 Mont. Laws, ch. 529, Hearing on HB 503, 67th Leg., Reg. Sess. 1 (Feb. 22, 2021).

¶31 Both A.J.B. and the State contend the Legislature incorrectly believed ICWA's notice requirements also applied to emergency hearings, which are distinct from foster care placement proceedings. *See In re H.T.*, 2015 MT 41, ¶ 38, 378 Mont. 206, 343 P.3d 159 (explaining ICWA allows emergency custody proceedings in emergency circumstances). As A.J.B. explains, the foster care placement hearing notice requirements do not apply to emergency proceedings such as an EPS hearing: 25 U.S.C. § 1922 governs emergency removal or placement of an Indian child, while 25 U.S.C. § 1912 governs child custody proceedings, and the former does not contain a notice requirement. A.J.B. argues preventing the families of Indian children from requesting and obtaining an EPS hearing within five business days of removal impermissibly denies them the opportunity to promptly challenge the necessity of an emergency removal. A.J.B. contends the

13

Legislature enacted § 41-3-306(7)(b), MCA, in good faith but inadvertently violated ICWA and equal protection requirements.

¶32 The State further draws our attention to 25 U.S.C. § 1922, which directs the responsible government agent to "insure that the emergency removal or placement terminates immediately when such removal or placement is no longer necessary to prevent imminent physical damage or harm to the child," and notes the federal code supports allowing the parents of Indian children to request an EPS hearing.

¶33 Having determined: in the context of emergency proceedings, the parents of Indian children are similarly situated to other parents whose children were removed by the Department on an emergency basis; § 41-3-306(7)(b), MCA, treats these similarly situated classes differently; § 41-3-306(7)(b), MCA, implicates a fundamental right and is therefore subject to strict scrutiny review; and no compelling state interest has been identified to justify the disparate treatment of these similarly situated classes, we therefore conclude A.J.B. has met her burden of proving, beyond a reasonable doubt, § 41-3-306(7)(b), MCA, unconstitutionally violates the right to equal protection of the law under both the U.S. and Montana Constitutions.

## CONCLUSION

¶34 This Petition for a Writ of Supervisory Control is ACCEPTED and GRANTED.

¶35 The District Court's October 25, 2022 Opinion and Order Re Request for EPS Hearing is REVERSED.

¶36 The State SHALL NOT ENFORCE § 41-3-306(7)(b), MCA.

14

¶37 This matter is REMANDED to the District Court for further proceedings consistent with this Opinion and Order and as necessary.

¶38 The Clerk is directed to send a copy of this Opinion and Order to all counsel of record in this matter and in Eighteenth Judicial District Court Cause No. DC-22-27D, and to the Honorable Andrew J. Breuner, presiding District Judge.

Dated this 17th day of January, 2023.

/S/ INGRID GUSTAFSON

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR